**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mario DIAZ, M.D., Defendant-Appellant.**

No. 83–5133.

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1984.

Xavier L. Suarez, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Ira Gropper, Asst. U.S. Atty., Miami, Fla., Steven J. Edelstein, Asst. Regulatory Atty., HHS, Atlanta, Ga., Judy K. Hunt, Miami, Fla., for plaintiff-appellee.

Before FAY and ANDERSON, Circuit Judges, and MARKEY *, Chief Judge of the Federal Circuit.

R. LANIER ANDERSON, Circuit Judge:

The United States sued Dr. Mario Diaz for alleged overcharges under Part B of the Medicare program. Adopting the analysis set forth today by this court in *United States v. Kass*, 740 F.2d 1493 (11th Cir. 1984), we reverse and remand for further proceedings.

From 1973 through 1975, Dr. Diaz filed for reimbursements under Part B of the Medicare program for treatments provided to eligible patients. 42 U.S.C.A. § 1395j, *et seq.* (West 1983). He was required to certify that the services he provided were "medically required." 42 U.S.C.A. § 1395n(a)(2).

Blue Shield of Florida, the fiscal intermediary (or "carrier") with designated authority to review Medicare claims, 42 U.S.C.A. § 1395u, noticed in 1975 that Diaz' claims were higher than the norm, as measured by "profiles" indicating normal Medicare utilization rates by local physicians.[1] It requested records from Diaz and performed "an indepth postpayment review" of his claims. Affidavit of Buddie Rivers, Department of Health and Human Services. By a letter dated January 13, 1976, Blue Shield informed Diaz that the records had failed "to provide answers for questions which have arisen regarding utilization of Medicare services." As a result, Diaz' file was referred to the Florida Medical Foundation, an independent body of physicians who provide peer review of Medicare disputes.

Diaz appeared before the Dade County peer review committee on February 19, 1976, to discuss the questioned 1973 claims. By letter of March 1, 1976, the county committee reported to the state committee that "substantial overutilization" of Medicare-reimbursed services had taken place. The state committee of the Florida Medical Foundation reviewed Diaz' files, concurred with the finding of overutilization, and notified Blue Shield on June 1, 1976.

Between June 1976 and March 1977, Blue Shield conducted further investigation on claims submitted by Diaz in 1974 and 1975. This investigation was guided by the recommendation from the state peer review committee. Blue Shield concluded, on March 30, 1977, that Diaz had been overpaid by amounts totalling $25,342. A letter dated April 5 informed Diaz of the conclusion, sought refund of the overpayments, and informed him of his right to seek administrative review of the determination. 42 U.S.C.A. § 1395u(b)(3)(C). Diaz did not seek review, nor did he refund the contested amount. The government brought this suit to collect the overpayment on May 11, 1982, more than five years after the final determination of liability.

Diaz moved to dismiss this case, arguing that it was not filed within the six-year statute of limitations provided for government actions on the contract. 28 U.S.C.A. § 2415(a) (West 1978).[2] The district court found that the six-year period did not begin to run until the final adminis-

---

* Honorable Howard T. Markey, Chief Judge, U.S. Court of Appeals for the Federal Circuit, sitting by designation.

1. The specific date of Blue Shield's initial concern is not in the record. In a letter of January 13, 1976, however, Blue Shield referred to its "recent" request of additional records on the claims in question; this letter is support for our assumption that the initial notice of possible overpayment was in 1975.

2. Section 2415(a) requires that contract actions by the United States be brought "within 6 years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by law, whichever is later ...." In determining the limitation period, § 2416(c) must also be taken into account. It states as follows:

For the purpose of computing the limitations period established in § 2415, there shall be excluded all periods during which ... facts material to the right of action are not known and reasonably could not have been known by an official of the United States charged with the responsibility to act in the circumstances ....

trative determination of liability was rendered on March 30, 1977. It thus found the action timely and subsequently entered summary judgment for the government.

We disagree with the district court. In *United States v. Kass,* 740 F.2d 1493 (11th Cir.1984), this court explored 28 U.S.C.A. §§ 2415–16 and applied the six-year limitations period to a similar action for recoupment of Medicare overpayments to a Florida physician. That case presented an identical series of administrative steps by which Blue Shield, as agent for the government, became aware of overutilization of Medicare. In *Kass,* we held that the statute of limitations began *no later than* the date at which the state peer review committee of the Florida Medical Foundation reported its findings to Blue Shield. *Id.* at 1497. That result was reached by examining the legislative history of the statute of limitation for guidance as to its construction. *Id.* at 1496–97. On the facts of *Kass,* the Florida Medical Foundation report to Blue Shield clearly put the government on notice of facts constituting the essence of the cause of action. Because the suit was filed more than six years later, we remanded to the district court for dismissal of the case against Kass as untimely filed.

In this case, the cause of action accrued more than six years before suit was filed, *i.e.,* when the government overpaid Diaz for services which were not medically necessary. *See United States v. Kass,* 740 F.2d 1493. However, the application of the § 2416(c) tolling provision is more difficult than in *Kass.* Here the Foundation notified Blue Shield of Diaz' overutilization on June 1, 1976. The suit against Diaz was filed on May 11, 1982, within six years from the date of that report. We cannot, however, conclusively determine on this record that the action was timely. *Kass* held that the state peer review report to

Blue Shield was the *latest* possible date for initiating the running of the six-year period. *Id.* at 1498. The record on appeal in this case is insufficient for us to determine whether "facts material to the right of action [were] not known and reasonably could not have been known" until June 1, 1976. 28 U.S.C.A. § 2416(c). If such facts could reasonably have been known earlier by the particular officials in the decision making process, the action may have been barred.[3]

We therefore reverse and remand to the district court for determination, consistent with this opinion and *Kass,* of whether the § 2416(c) tolling of the six-year statute of limitation was lifted before May 11, 1976.[4]

REVERSED and REMANDED.

---

**3.** As in *Kass,* the government can make no claim that it complied with § 2415(a) by filing suit within one year of final administrative action.

**4.** Diaz also argues that the district court improperly granted summary judgment to the govern-

ment without a hearing and failed to consider arguments raised by his own summary judgment motion. Because all the arguments Diaz intended to raise dealt with the statute of limitations question, the remand will enable him to make his claim as he sees fit.