**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Mario M. DIAZ, M.D.,
Defendant-Appellee.**

No. 85–5811.

United States Court of Appeals,
Eleventh Circuit.

June 3, 1986.

Leon B. Kellner, U.S. Atty., Alan I. Mishael, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Xavier L. Suarez, Barnett, Alagia, Zamora & Suarez, John E. Kirkpatrick, Miami, Fla., for defendant-appellee.

Before FAY, Circuit Judge, HENDERSON* and NICHOLS**, Senior Circuit Judges.

PER CURIAM:

On May 11, 1982 the United States brought suit to recover $25,258.21 in overpayments made to Dr. Mario M. Diaz under Part B of the Medicare program, 42 U.S.C. §§ 1395j–1395w (1982 & Supp. I 1983). The district court entered summary judgment in favor of Dr. Diaz, finding that the government's suit was barred by the statute of limitations. We reverse.

could, if the appellate court reversed the bankruptcy court, obtain an award of damages from the trustee.

\* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

## I.

We begin with a short discussion of the relevant facts.[1] After reimbursing Dr. Diaz for claims submitted under Part B of the Medicare program during 1973–75, Blue Cross and Blue Shield of Florida, Inc. ("Blue Cross") made a preliminary determination that Dr. Diaz may have been overpaid.[2] Blue Cross therefore forwarded Dr. Diaz' file to the Florida Medical Foundation ("FMF") for "peer review."

The Dade County Medical Association Peer Review Committee concluded that there was a "substantial overutilization of Medicare benefits within [Dr. Diaz'] office." On May 1, 1976 the State Peer Medical Utilization Committee reviewed the matter and by letter dated June 1, 1976 notified Blue Cross of its agreement.

Efforts to collect the Medicare overpayments from Dr. Diaz proved fruitless. Thus, on May 11, 1982 the United States filed suit. Dr. Diaz moved to dismiss, arguing that suit was not filed within the six-year statute of limitations provided by 28 U.S.C. § 2415(a) (1982).[3] The district court found the action timely and subsequently entered summary judgment for the government. We reversed and remanded, finding that the record on appeal was insufficient for us to determine whether or not the action was timely. *United States v. Diaz*, 740 F.2d 1491, 1493 (11th Cir.1984).

We identified June 1, 1976, when FMF notified Blue Cross of its finding that Dr. Diaz was overpaid, as "the *latest* possible date for initiating the running of the six-year period." *Id.* (emphasis in original). While the suit against Dr. Diaz was filed within six years of June 1, 1976, we remanded the case to the district court for determination of whether facts material to the right of action were known or reasonably could have been known before June 1, 1976. *Id.* "If such facts could reasonably have been known earlier by the particular officials in the decision making process," we noted, "the action may have been barred." *Id.* (footnote omitted).

On remand, both parties renewed their motions for summary judgment. Oral argument was conducted and the district court entered summary judgment in favor of Dr. Diaz. The district court found that the government's action was untimely:

> The Court is firmly convinced that by May 1, 1976, the government could reasonably have known that both peer committees had ruled that overutilization occurred. Having chosen the vehicle of external reviews by peer committees, the government is charged with knowing the result of those reviews as they occur. The government cannot take advantage of delays in communication between its appointed agents and itself. To rule otherwise would permit the government to set in motion unending external reviews and wait indefinite periods of time for their decision. That would subvert the purpose of the Statute of Limitations.

1. A complete recitation of the facts is set forth in *United States v. Diaz*, 740 F.2d 1491 (11th Cir.1984).

2. Blue Cross is the private insurance carrier assigned the task of administering Part B of the Medicare program in Florida. *See* 42 U.S.C. § 1395u(a) (1982). The carrier is charged with the responsibility of reviewing Part B claims to insure that the claims are "reasonable and necessary." *See* 42 U.S.C. § 1395y(a)(1)(A) (Supp. I 1983).

3. Section 2415(a) provides in pertinent part that:

> every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six

> years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later...."

In determining the limitation period, 28 U.S.C. § 2416 (1982) must be taken into account:

> For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—
>
> \*   \*   \*   \*   \*   \*
>
> (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances ...

Since suit was not filed until May 11, 1982, more than six years elapsed between the time the cause of action accrued and the filing of the suit. The instant suit is thus barred.

The United States filed a motion to alter and amend the final summary judgment but the district court denied the motion. This appeal promptly followed.

### II.

The district court concluded that the United States should be "charged with knowing" that it overpaid Dr. Diaz as of May 1, 1976, finding that FMF was in 1976 an agent of Blue Cross. We disagree. There is nothing in the record to support the district court's characterization of FMF as an agent of Blue Cross.

In addition, our previous descriptions of FMF's role in Medicare overcharge disputes refute the district court's finding. In *United States v. Kass,* 740 F.2d 1493, 1495 (11th Cir.1984) (footnote omitted) (emphasis added), we described FMF as *"an independent organization* of doctors that provides peer review of cases in which Medicare overcharges are suspected." Similarly, in *Diaz,* 740 F.2d at 1492 (emphasis added), we reaffirmed that FMF is *"an independent body* of physicians who provide peer review of Medicare disputes."

We therefore conclude that FMF was not an agent of Blue Cross in 1976. We need only now consider whether the United States knew or reasonably could have known of its cause of action against Dr. Diaz before receiving FMF's June 1, 1976 report. In *Kass,* 740 F.2d at 1497 we held

that the government is not to be charged with knowledge of Medicare claim overpayment until facts material to the right of action are "reasonably knowable."

On remand, the United States submitted the supplemental affidavit of Buddie Rivers, an overpayment recovery specialist with the Department of Health and Human Services. This uncontroverted affidavit establishes that Blue Cross did not know, and reasonably could not have known, of its cause of action against Dr. Diaz until it received FMF's June 1, 1976 report.[4] Because the United States filed suit on May 11, 1982 less than six years later, the action against Dr. Diaz is timely.

### III.

Concluding that the government's suit against Dr. Diaz is timely completes our task. Because Medicare reimbursement determinations are not subject to judicial review, *United States v. Erika, Inc.,* 456 U.S. 201, 206–11, 102 S.Ct. 1650, 1653–55, 72 L.Ed.2d 12 (1982); *United States v. Sanet,* 666 F.2d 1370, 1372–75 (11th Cir. 1982), we reverse the district court's summary judgment in favor of Dr. Diaz and remand with instructions to enter summary judgment in favor of the United States.[5]

REVERSED and REMANDED.

---

**4.** Buddie Rivers stated that Blue Cross did not learn of FMF's conclusion until Blue Cross received FMF's report "sometime after June 1, 1976."

Between January 13, 1976, the time Dr. Diaz's file was referred to peer review and the time the peer review report was actually received by the carrier along with the return of his records, sometime after June 1, 1976, the carrier was not in contact with either Dr. Diaz or the Florida Medical Foundation, and, as is customary, no further review or examination of Dr. Diaz's file was made by the carrier between those dates. Consequently, the carri-

er did not know, and reasonably could not have known, the material facts necessary to the cause of action against Dr. Diaz until the carrier received the Medical Foundation's report along with Dr. Diaz's file, sometime after June 1, 1976.

In *Kass,* 740 F.2d at 1497 and in *United States v. Beck,* 758 F.2d 1553, 1559 (11th Cir.1985), we also found that receipt of FMF's report constituted notice of the cause of action.

**5.** The parties agree that our ruling on the issue surrounding the statute of limitations is dispositive of the case.