**AMERICAN AMBULANCE SERVICE OF PENNSYLVANIA, INC.**

v.

**Louis W. SULLIVAN, M.D., et al.**

**Civ. A. No. 87–7746.**

United States District Court,
E.D. Pennsylvania.

March 29, 1991.

Stirling Lathrop, Philadelphia, Pa., for plaintiff.

James G. Sheehan, Barbara Koppa Gerolamo, Asst. U.S. Attys., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this litigation, the plaintiff, American Ambulance Service of Pennsylvania, Inc. (AASI), challenges the methods by which Medicare Part B reimbursement decisions for ambulance service providers are made. AASI and the defendants, the Secretary of Health and Human Services (the Secretary), the Administrator of the Health Care Financing Administration, and the Medical Service Association of Pennsylvania, have filed cross-motions for summary judgment. For the reasons that follow, the defendants' motion will be granted.

### I. Background

#### A. The Medicare Part B Program

The Medicare Program, which is set forth in Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc, consists of two parts. Part A, which is not at issue in this suit, covers basic institutional health costs and is provided automatically to all Social Security Trust Fund recipients. 42 U.S.C. §§ 1395c–1395i–2. In contrast, Part B is a voluntary, federally subsidized health insurance program that pays a portion of certain medical and other health service expenses not covered under Part A. 42 U.S.C. §§ 1395j–1395w. Importantly for present purposes, medical costs covered under Part B include ambulance services when use of other methods of transportation "is contraindicated by the individual's condition, but only to the extent provided in regulations." 42 U.S.C. § 1395x(s)(7). The regulations, which interpret the statute, provide that Medicare Part B "pays for ambulance service only if—(1) Other means of transportation would endanger the beneficiary's health." 42 C.F.R. § 410.40(b). Enrollment in the Part B program is restricted to persons who are disabled or 65 or older, 42 U.S.C. § 1395o, and eligibility does not depend on financial need. The program is financed by the Federal Supplementary Medical Insurance Trust Fund, which is maintained by "appropriations from the Treasury, together with monthly premiums paid by the individuals who choose voluntarily to enroll in the Part B program. Part B consequently resembles a private medical insurance program that is subsidized in major part by the Federal Government." Schweiker v. McClure, 456 U.S. 188, 190, 102 S.Ct. 1665, 1667, 72 L.Ed.2d 1 (1982).

In order to take advantage of insurance carriers' " 'great experience in reimbursing physicians,' " id., (quoting H.R.Rep. No. 213, 89th Cong., 1st Sess. 46 (1965)), Congress has authorized the Secretary to delegate to private insurance carriers the tasks of setting rates, reviewing claims, and paying charges covered by Part B from the Trust Fund on the Secretary's behalf. 42 U.S.C. § 1395u. Part B enrollees may seek direct reimbursement for medical services or may assign the right to reimbursement to the health care provider. Typically, after a Part B enrollee receives medical care, he or she submits a Medicare

voucher to the provider, which, in turn, submits the voucher to a participating insurance carrier. 42 U.S.C. § 1395u(b)(3). The carrier pays the provider approximately 80% of the provider's submitted costs, subject to the carrier's responsibility to establish "reasonable amounts," 42 U.S.C. § 1395x(v); 42 C.F.R. § 403.501 et seq., with the enrollee bearing the remaining 20 percent. The Secretary finances the participating carriers' costs of claims administration. 42 U.S.C. § 1395u(c).

As with private medical insurance, the Part B program and its implementing regulations delineate conditions and limitations on reimbursement, 42 U.S.C. § 1395k, 1395l, 1395x(s), and exclude certain items and services from coverage. 42 U.S.C. § 1395y. Once the carrier has been billed for a given service, it determines if the service was medically necessary, whether the charge was reasonable, and whether the claim was otherwise covered by Part B. 42 U.S.C. § 1395y(a). If the carrier ascertains that the claim meets all these criteria, it pays the claim out of the Trust Fund. 42 U.S.C. §§ 1395u(a)(1), 1395u(b)(3), 1395u(c); Schweiker v. McClure, 456 U.S. at 191, 102 S.Ct. at 1667–68. As a corollary of this authority, the insurance carrier may conduct periodic post-payment surveys and audits of the supplier's records. See United States v. Sanet, 666 F.2d 1370, 1372 (11th Cir.1982).

On the other hand, if the carrier declines on behalf of the Secretary to pay all or part of a submitted claim, the claimant is entitled to a "review determination." Under that procedure, a carrier employee (other than the initial decision-maker) undertakes a de novo review of the written record and either affirms or adjusts the original determination. 42 C.F.R. §§ 405.803–405.806. If still disgruntled, and if the amount in controversy is $100.00 or more, the claimant then may request an oral evidentiary hearing before a hearing officer appointed by the carrier. 42 U.S.C. § 1395u(b)(3)(C). The hearing officer may be an employee of the carrier, but may not preside over the case if "he is prejudiced or partial with respect to any party, or if he has any interest in the matter." 42 C.F.R. § 405.824. The hearing officer is obliged to follow all statutory and regulatory provisions, in addition to any "policy statements, instructions and other guides" promulgated by the Secretary. 42 C.F.R. § 405.860. Indeed, the hearing officer may not disregard or pass on the validity of the Medicare Act, regulations promulgated thereunder, policy statements, instructions, or any guidelines issued by the Health Care Financing Administration (HCFA). 42 C.F.R. § 405.860; Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 680, 106 S.Ct. 2133, 2140–41, 90 L.Ed.2d 623 (1986); American Ambulance Serv. v. Sullivan, 911 F.2d 901, 905 (3d Cir.1990); Medical Fund–Philadelphia Geriatric Center v. Heckler, 804 F.2d 33, 39 (3d Cir.1986). After receiving evidence and entertaining argument, the hearing officer must render a written decision based on the record. 42 C.F.R. §§ 405.830, 405.834. Unless the carrier or the hearing officer reopens the proceedings, the ruling is "final and binding upon all parties to the hearing." 42 C.F.R. § 405.835.

Thus, in normal circumstances, agency actions under Part B are not reviewable by federal courts. United States v. Erika, Inc., 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982). Unlike aggrieved Part A beneficiaries, who are entitled to judicial review of administrative determinations, 42 U.S.C. § 1395u(b)(3)(C), Part B recipients are afforded only "an opportunity for a fair hearing by the carrier." This limitation on federal jurisdiction does not apply, however, to "challenges mounted against the method" employed by the Secretary or his agent in reaching Part B determinations. Michigan Academy, 476 U.S. at 675, 106 S.Ct. at 2138 (emphasis deleted). Those controversies, as opposed to "the determinations themselves," id. (emphasis deleted), touch upon matters that "Congress did not delegate to private carriers" and accordingly are "cognizable in courts of law." Id. at 680, 106 S.Ct. at 2140–41. As the Third Circuit has explained, "Erika and Michigan Academy define the ends of a continuum. At one end are disputes over amount computations

at issue in a particular case. At the other are disputes arising from the Secretary's rules, regulations and instructions which are applied by the Hearing Officer." *American Ambulance*, 911 F.2d at 905. The latter may be adjudicated in federal court, while the former may not.[1]

## B. Facts and Procedural History

As disclosed by the joint stipulated record, between January 1, 1983 and September 30, 1984, AASI provided 428 ambulance trips to three Medicare Part B enrollees, George Dagilus, Francis New, and Joseph Perla. The services involved transporting the individuals from their residences to St. Mary's Hospital, where each received outpatient dialysis treatment. The plaintiff's charges totalled $122,656. As assignee of the enrollees, it submitted claims for that amount to the Medical Service Association of Pennsylvania, which is more commonly known as Blue Shield, in its capacity as a Medicare Part B carrier. Attached to AASI's claims were Supplemental Documentation for Ambulance Transportation (SDFAT) forms, signed by the enrollees' physicians. Each SDFAT form certified that the enrollee's physical condition required movement by a stretcher, that transportation by means other than an ambulance was contraindicated, and that the enrollee was confined to bed both before and after the ambulance transportation. Additionally, AASI filed letters from each enrollee's treating physician stating that ambulance services were medically necessary.

After evaluating the claims, Blue Shield decided to pay AASI, but it ascertained that reimbursement should be limited to $114,347, the amount Blue Shield found to be a reasonable charge for the services. The carrier therefore paid AASI $91,420.60, or 80% of the determined reasonable charge. Several months later, Blue Shield conducted a post-payment survey on the claims. The survey, based on a review of the patients' hospital and nursing home records, indicated that, at the time AASI's services were supplied, the enrollees could ambulate with the assistance of a walker or wheelchair and were not confined to bed. Blue Shield concluded that the ambulance services were not called for and asked for its $91,420.60 back.

At the plaintiff's request, Blue Shield reviewed the decision to demand repayment, but ultimately adhered to its position. AASI then appealed to a carrier-appointed hearing officer pursuant to 42 C.F.R. § 405.820–872. At the hearing, convened on July 15, 1986, AASI argued that it had complied fully with all Part B regulations by providing medical certifications and documentation showing the necessity of ambulance transportation for the three enrollees. Further, AASI challenged Blue Shield's denial of reimbursement by contending that a non-physician supplier lacked the authority to overrule a medical determination by a physician. Last, the plaintiff urged the hearing officer to apply 42 U.S.C. § 1395pp, which waives provider liability for overpayments if payment is denied pursuant to § 1395y(a)(1) and if the provider reasonably could not have expected that payment would be denied. According to AASI, neither it nor the enrollees knew or could have known that the services at issue were not medically reasonable and necessary.

Blue Shield maintained at the hearing that the ambulance services were not reimbursable under Medicare Part B. Invoking section 2120 of the Medicare Carrier's Manual and HCFA Carrier Letter 10–80, Blue Shield asserted that ambulance services are covered only upon submission of a claim that conclusively contraindicates the feasibility of transport by other means. The carrier argued that patients able to ambulate with assistance, such as with a walker or wheelchair, and those receiving routine outpatient maintenance dialysis do not normally qualify for ambulance service. Blue Shield, relying on the medical records of

---

**1.** In 1986, Congress amended 42 U.S.C. § 1395ff(b)(1)(C) to permit judicial review of all Part B determinations. That revision applies only to Medicare services furnished after January 1, 1987. Because the services at issue in this case were provided before that date, the amendment is not relevant here.

two enrollees and on an interview with the third, contended that the enrollees' "medical conditions had not been such as to have contraindicated the use of other means of transportation." It further stated that a waiver of liability is not available when payment for a medically unnecessary item or service is also barred for failure to meet a condition of payment stated in the regulations.

The hearing officer, along with a physician consultant, reviewed the enrollees' medical records. In a written opinion, she subsequently rejected AASI's appeal for two reasons. First, the hearing officer found that other means of transportation were not conclusively contraindicated. 42 U.S.C. § 1395x(s)(7). Second, she decided that AASI was not entitled to a waiver of liability under 42 U.S.C. § 1395pp because the denial was based on § 1395x(s)(7), not § 1395y(a)(1).

AASI then filed an action in this Court. AASI and Blue Shield moved for summary judgment. The Court, construing the plaintiff's thirteen-count complaint as an attack on the carrier's determination, rather than on the method by which it was reached, dismissed the case for lack of subject matter jurisdiction on the authority of *Erika.* 716 F.Supp. 861 (1989). AASI appealed to the Third Circuit regarding the dismissal of counts VI, VII, VIII, and IX.[2] The provider argued that those claims did in fact question the method by which Blue Shield, acting as the Secretary's agent, makes its determinations. The Third Circuit agreed and reversed. 911 F.2d 901. Because the four counts "presented colorable challenges to the method by which the Medicare Part B reimbursement decisions for ambulance service providers are made," *id.* at 910, it held that *Michigan Academy* was the applicable precedent and that this Court therefore erred in concluding it did

not have jurisdiction. The Third Circuit remanded those claims for consideration on the merits. As noted, the parties now have filed cross-motions for summary judgment.

## II. Discussion

The Act states that payment for services under Part B *"may be made . . . only if . . .* a physician certifies that . . . (B) in the case of medical and other health services, . . . such services are or were medically required." 42 U.S.C. § 1395n(a), (a)(2) (emphases added). As defined by 42 U.S.C. § 1395x(s), (s)(7), "medical and other health services," which are normally covered pursuant to 42 U.S.C. § 1395k(a)(2)(B), means "ambulance service where the use of other methods of transportation *is* contraindicated by the individual's condition, *but only to the extent* provided in the regulations." (Emphases added). The regulations, in turn, state in relevant part that "Medicare Part B pays for ambulance transportation *only if*—(1) Other means of transportation *would endanger* the beneficiary's health." 42 C.F.R. § 410.40(b) & (b)(1) (emphasis added).

42 U.S.C. § 1395y(a)(1) articulates an additional restriction on reimbursement. It provides that "[n]otwithstanding any other provision of this subchapter,"[3] "no payment may be made" under Part B "for any expenses incurred for items or services . . . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury." That section is tempered, however, by 42 U.S.C. § 1395pp(a), which states that if a carrier denies payment because the services were unnecessary or unreasonable under 42 U.S.C. § 1395y(a)(1), the provider nevertheless should be paid (or not held liable for recoupment) if the provider did not know and had no reason to know that the payment would be denied. The waiver section allows that when

---

**2.** Oddly, the plaintiff, when it filed its first motion for summary judgment in this Court several months before the appeal was taken, already had agreed to a voluntary dismissal of Counts VI, VII, and IX. Pl.Motion for Summ.Judg., Apr. 3, 1989, cover pg., lines 6–9 ("American Ambulance Service of Pennsylvania will accept dismissal of Counts III, IV, VI, VII and IX of the First Amended Complaint and that portion of

Count X asserting a claim under the United States Constitution."). No party appears to have drawn the Third Circuit's attention to this fact.

**3.** "This subchapter" means subchapter XVIII, which is entitled Health Insurance for Aged and Disabled and which embraces Parts A, B, and C of the Act, 42 U.S.C. §§ 1395–1395xx.

(1) a determination is made that, by reason of section 1395y(a)(1) or (9) of this title, payment may not be made under part A or part B of this subchapter ... and

(2) both such individual and such provider of services ... did not know, and could not reasonably have been expected *to know, that payment would not be* made for such items or services under such part A or part B,

then *to the extent permitted by this subchapter,* payment shall, notwithstanding such determination, be made for such items or services ... as though section 1395y(a)(1) of this title and section 1395y(a)(9) of this title did not apply.

(Emphasis added).

In an endeavor to clarify the Medicare statutes and administrative rules and to guide hearing officers, the Secretary promulgates a Carrier's Manual and various Regional Letters. Three such provisions are pertinent here.[4] First, section 2120.2.A of the Carrier Manual provides:

*Necessity for the Service*—Medical necessity is established when the patient's condition is such that the use of any other method of transportation is contraindicated. In any case in which some means of transportation other than an ambulance could be utilized without endangering the individual's health, whether or not such other transportation is actually available, no payment may be made for ambulance service.

Second, section 7300.2.C of the Carrier Manual states that "[t]he waiver of liability provision does not apply to denials for medically unreasonable or unnecessary items or services which are denied because another section [i.e., other than § 1395y(a)(1)] is applicable." It goes on to say:

Similarly, the waiver of liability provision is not applicable where payment for a medically unreasonable or unnecessary item of service is also barred because of

failure to meet a condition of payment required by regulations, as in the following examples:

. . . . .

b. Ambulance services partially denied because the trip exceeded covered limits ([Carrier Manual section] 2120.3), or because the statutory vehicle and crew requirements were not met ([Carrier Manual section] 2120.1), or because the patient's condition did not contraindicate use of another method of transportation ([Carrier Manual section] 2120.2.A). Such denials would be based on [42 U.S.C. § 1395x(s)(7)] of the Act, not [42 U.S.C. § 1395y(a)(1)].

Carrier Manual § 7300.2.C.6.

Last, HCFA Regional Medicare Letter 10–80 states that

To be considered a covered service, the claim file for the ambulance trip must conclusively contraindicate (i.e., make inadvisable) the feasibility of transport by any other method. If the file does not clearly give evidence that use of other than an emergency vehicle would endanger the beneficiary's health or that the beneficiary is physically incapable of using any other reasonable modes of transport, the claim is not considered coverable (at that point). When any necessary development is undertaken, the claim may later prove to be coverable; the carrier should not make any assumptions, however, in lieu of clearcut evidence.

. . . . .

Of course, documentation indicating that the beneficiary was bedridden, unconscious, hemorrhaging, requiring oxygen, etc. is sufficient evidence of the necessity of transport. Indications that the beneficiary can walk with assistance, with a walker, with crutches, or a cane or use a wheelchair usually mean other modes of transportation are possible.

(Emphasis added). Letter 10–80 also addresses situations involving "repetitive am-

---

**4.** The plaintiff argued before the Third Circuit that it was challenging Manual § 2120.2(B)'s use of the term "unreasonable" on the ground that it interposed a requirement not present in 42 U.S.C. § 1395n(a)(2), § 1395x(s)(7), or the regulations. 911 F.2d at 906. AASI has abandoned this contention. Nowhere in its memorandum does the plaintiff cite or discuss § 2120.2(B).

bulance services on beneficiary files which, upon investigation, were found to be unreasonable." One example explicitly discussed is ambulance transportation for maintenance dialysis patients. "[A] patient receiving maintenance dialysis on an outpatient basis is not ordinarily ill enough to require ambulance transportation for dialysis treatment.... [In such cases,] coverage would be the exception rather than the rule."

Stated generally, AASI contends that the Medicare statute and regulations impose the responsibility for determining medical necessity on the physician, and the physician's certification supplies a baseline presumption of medical necessity that animates the entire Act. Thus, AASI argues, if a physician certifies that a service was necessary, the Secretary must accept that judgment. In promulgating Manual § 2120.2.A and Letter 10–80, "the Secretary has gone well beyond the provisions and structure of the Act. Ambulance providers are not physicians. The Act does not expect them to evaluate medical condition as a function of ambulatory status. Indeed, the Act does not expect them to make any *medical* evaluation at all." Pl. Mem., Jan. 15, 1991, at 17. In particular, the plaintiff claims that Letter 10–80 and Manual §§ 2120.2.A and 7300.2.C effectively place extra requirements on ambulance providers by forcing them to make determinations regarding the necessity of ambulance service independent of those already reached by certifying physicians, to evaluate the medical condition of beneficiaries against the "very narrow" criteria established in the provisions, and to refuse to transport patients who do not appear to meet those standards. *Id.* at 32, 36. These administrative declarations, according to AASI, constitute substantive rules that cannot be valid because they were never subject to notice and comment rulemaking. *See* 5 U.S.C. § 553; 2 K. Davis, *Administrative Law Treatise* § 7:8 (2d ed. 1979).

AASI's case rests on the theory that § 7300.2.C of the Manual deviates from the Act in another respect. The plaintiff maintains that whenever ambulance services are deniable as not "reasonable and necessary" under 42 U.S.C. § 1395y(a)(1), they are also deniable because all other methods of transportation are not "contraindicated" under 42 U.S.C. § 1395x(s)(7). In other words, AASI says, § 1395x(s)(7) is just a more specific elaboration of the requirement stated in § 1395y(a)(1). AASI argues that because Carrier Manual § 7300.2.C instructs that a waiver of liability under 42 U.S.C. § 1395pp is never available if payment is denied under some section of Part B other than 42 U.S.C. § 1395y(a)(1), the hearing officer must consider whether another provision besides § 1395y(a)(1) is applicable before denying payment under § 1395y(a)(1). Thus, the plaintiff surmises, § 7300.2.C mandates that hearing officers always must apply § 1395x(s)(7), and, contrary to the Medicare Act, ambulance service providers always will be denied waiver.

■ It is plain that the plaintiff's primary thesis—that physician certification establishes a presumption of coverage under Part B or insulates providers from bearing the risk of erroneous certifications—is fanciful. Part B establishes three separate conditions for reimbursement, each of which an ambulance provider must satisfy before payment may ultimately be said to be proper. First, it must tender a physician certification attesting that the service was medically required. 42 U.S.C. § 1395n(a), (a)(2). The statute's language emphasizes that physician certification is a necessary, but not sufficient, predicate to reimbursement, and makes clear that the requirement "is a precondition for *payment,* not *coverage.*" *New York on behalf of Bodnar v. Secretary of Health and Human Serv.,* 903 F.2d 122, 125 (2d Cir. 1990); *see* 42 U.S.C. § 1395ff(a); *Himmler v. Califano,* 611 F.2d 137, 140 (6th Cir. 1979). 42 U.S.C. § 1395n(a), (a)(2) states that payment for services under Part B "may" be made "only if" a physician certifies that the medical and other health care services furnished "are or were medically required," or, as the regulations put it, "medically necessary." 42 C.F.R. § 410.12(3). In contravention of sound methods of statutory construction, AASI

reads "may" as "shall" and "only if" as "if" or "whenever."

Second, all other types of services must be "contraindicated" by the patient's condition, 42 U.S.C. § 1395x(s), (s)(7), that is, the use of "[o]ther means of transportation would endanger the beneficiary's health," 42 C.F.R. § 410.40(b) & (b)(1), before ambulance service may qualify at all as a covered "medical and other health" service. 42 U.S.C. § 1395x(s), (s)(7)'s dictate that ambulance service constitutes a medical or health service within the meaning of Part B only if the utilization of other forms of transportation "is contraindicated by the individual's condition" demonstrates that it is the beneficiary's objective medical condition which is pertinent to coverage, not simply the physician's assessment. *See* S.Rep. No. 404, 89 Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin. News 1943, 1983 ("Ambulance services would be covered *only where* other methods of transportation *are not feasible* due to the individual's condition, and only to the extent provided by the regulations. It is the intention of the committee that transportation by ambulance be covered *only if* ... normal transportation *would endanger* the health of the patient." (emphases added)).

Last, the expenses incurred for the service must be "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1). This is so even if the ambulance service constitutes a "medical and other health" service within the meaning of Part B. 42 U.S.C. § 1395y(a)(1) ("Notwithstanding any other provision of this subchapter ..."); S.Rep. No. 404, 89 Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1989 ("The committee's bill would exclude certain health items and services from coverage under both [Part A and Part B] in addition to any excluded through the operation of other provisions of the bill.") [5]; *see also Association of Seat Lift Mfrs. v. Bow-*

*en*, 858 F.2d 308, 309 (6th Cir.1988) (stating that 42 U.S.C. § 1395y(a)(1) "prohibits payment for medical services or items which, *although* within the general scope of coverage [under Part B], are 'not reasonable and necessary for the diagnosis or treatment of illness or injury.'" (emphasis added)), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989); *Hultzman v. Weinberger*, 495 F.2d 1276, 1281–82 (3d Cir.1974). Unlike the contraindication requirement of § 1395x(s)(7), which focuses on the individual's physical condition, § 1395y(a)(1) looks to whether there was an appropriate nexus between the service provided and the treatment of the beneficiary's malady. As the Senate Report explained:

> [T]he bill would bar payment for health items or services that are not reasonable and necessary for the treatment of illness or injury or to improve the functioning of a malformed body member. Thus, payment could be made for the rental of a special hospital bed to be used by a patient in his home only if it was a reasonable and necessary part of a sick person's treatment. Similarly, such potential personal comfort items and services as massages and heat lamp treatments would only be covered where they contribute meaningfully to the treatment of an illness or injury or the functioning of a malformed body member.

S.Rep. No. 404, 89 Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin. News 1989. If the service was not reasonable and necessary part of the beneficiary's treatment, then "no payment may be made," 42 U.S.C. § 1395y(a)(1), unless, however, the beneficiary and the provider "did not know, and could not reasonably have been expected to know that payment would not be made" for the service, but even in that case only "to the extent permitted by this subchapter." 42 U.S.C. § 1395pp(a).

---

**5.** AASI invokes this legislative statement as proof that section 1395y(a)(1) is merely "cumulative." That view not only violates the canon of construction that separate provisions of an Act should not be rendered redundant, but it is also incorrect as a matter of intent. Both the statute and Congress's declaration indicate that even if a service passes muster under all other provisions of the Act, it still may be excluded as unnecessary or unreasonable to treatment.

AASI's argument that, in cases of ambulance service, review of the beneficiary's underlying medical condition is more or less limited to instances of suspected fraud when a physician's certification has been tendered also ignores that portion of the Act which confers authority upon the Secretary or his agent to investigate claims. 42 U.S.C. § 1395u(a), (a)(1)(C) allows the Secretary to delegate to private carriers the function of making "such audits of the records of providers as may be necessary to assure that proper payments are made under this part." As just explained, whether ambulance services are properly furnished, that is, constitute "medical and other health care services" under Part B, depends in part on whether transportation by other methods "is contraindicated by the individual's condition." 42 U.S.C. § 1395x(s), (s)(7). The statute additionally states that the propriety of charges also turns on whether those services were "reasonable and necessary" to treatment. 42 U.S.C. § 1395y(a)(1). Nothing in the legislative history supports the plaintiff's view that the Secretary's investigatory power is confined to ascertaining whether certification was fraudulently obtained. *See* S.Rep. No. 404, 89 Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1949, 1991, 1993. Indeed, if a physician's certification alone is adequate to warrant payment and coverage under the Act, one might fairly wonder why Congress added § 1395pp(a) to permit waiver for medical or health services found to be not "reasonable and necessary" for diagnosis or treatment.

The Secretary's reading of the statute does not, as the plaintiff suggests, reduce the physician certification requirement to a meaningless appendage. The Supreme Court has noted that "Part B is a social program of substantial dimensions. More than 27 million individuals presently participate, and the Secretary pays out more than $10 billion in benefits annually. In 1980, 158 million Part B claims were processed." *Schweiker v. McClure*, 456 U.S. at 190, 102 S.Ct. at 1667. Thus, "[b]ecause it would not be administratively feasible to routinely require, in advance of payment, full medical documentation of services,"

*Sanet*, 666 F.2d at 1372, let alone to investigate fully the validity of all claims, the submission of a certification provides the Secretary or his agent with preliminary assurance that payment is due. *United States v. Beck*, 758 F.2d 1553, 1558 (11th Cir.1985) (stating that large volume of Medicare claims makes reliance on physician's certification necessary "in the first instance"); *Szekely v. Florida Medical Ass'n*, 517 F.2d 345, 348 (5th Cir.1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). That does not, however, translate into an automatic presumption of or entitlement to reimbursement for a provider in derogation of the Secretary's indisputable authority to make the "determination of whether an individual is entitled to benefits under part A or part B" of the Medicare program. 42 U.S.C. § 1395ff(a); *see Bodnar*, 903 F.2d at 125.

■ The foregoing discussion implicitly disposes of AASI's argument that Carrier Manual § 7300.2.C divests it of the benefit of waiver ostensibly conferred by the Act. Section 1395x(s)(7) and section 1395y(a)(1) are conceptually distinct. The former is a definitional provision that asks whether what was furnished was a "medical or other health" service at all. If it was not, and even if the service was otherwise "reasonable and necessary" under § 1395y(a)(1), it is excluded from coverage under Part B. 42 U.S.C. § 1395k(a)-(a)(2)(B); *see Goodman v. Sullivan*, 891 F.2d 449, 450 (2d Cir.1989), *aff'g* 712 F.Supp. 334, 338 & n. 12 (S.D.N.Y.1989). The latter inquires whether the service was necessary and reasonable to the treatment or diagnosis of the beneficiary's illness. One can readily envision many instances in which § 1395x(s)(7) is satisfied, but § 1395y(a)(1) is not. For example, if a provider were to take a hemorrhaging patient to the zoo by ambulance, the service would constitute a "medical or other health" service within the meaning of Part B because the use of other methods of transportation would endanger the beneficiary's health. Yet, furnishing the service would not "contribute meaningfully to the treatment of an illness or injury," S.Rep. No. 404, 89 Cong., 1st Sess.,

*reprinted in* 1965 U.S.Code Cong. & Admin.News 1989, and consequently would not be reasonable and necessary to the treatment of the patient's injury under § 1395y(a)(1).

The Third Circuit has made the distinction between a definitional section of the Medicare Act and § 1395y(a)(1)'s reasonable and necessary requirement. In *Hultzman v. Weinberger,* 495 F.2d 1276 (3d Cir. 1974), the Court considered the Secretary's decision that services rendered to the petitioner were not reasonable and necessary inpatient hospital services and therefore were excluded from coverage pursuant to § 1395y(a)(1). In rejecting the Secretary's interpretation of the provision, the panel stated that § 1395y(a)(1) does not speak to whether services must be provided on an inpatient or outpatient basis, but "excludes from coverage *only* those services which are not reasonable and necessary to the treatment or diagnosis of a patient's ailments." *Id.* at 1282 (emphasis added). The Court, concluding payment should be made, then declared that all other parts of the Act had been satisfied, including the condition that the services furnished met "the definition of 'inpatient hospital services'" enunciated by § 1395x(b). *Id.* Indeed, the panel took great pains to note that the hearing examiner's decision did not "represen[t] a finding that the services provided were not within the definition of inpatient hospital services." *Id.* at 1282 n. 9. If the definitional section of the Act and § 1395y(a)(1) were coterminous, there would have been no need to point this out.

As support for its position, AASI relies predominantly on Carrier Manual § 2120.2.A's explanation that "medical necessity" arises when the beneficiary's condition "is such that the use of any other method of transportation is contraindicated." This, the plaintiff claims, shows that even the Secretary regards the terms "necessary" in § 1395y(a)(1) and "contraindicate" in § 1395x(s)(7) to be identical. AASI's hypothesis is predicated on an erroneous reading of § 2120.2.A. Section 2120.2.A defines not the "reasonable and necessary" restriction in § 1395y(a)(1), but rather the "medically required" or "medi-cally necessary" requirement concerning physician certification under § 1395n(a), (a)(2) and its companion regulation, 42 C.F.R. § 410.12(3). The word "medical," whether in the form of an adverb or adjective, appears nowhere in § 1395y(a)(1), let alone as a modifier of "necessary" or some synonym. AASI's interpretation is further rebutted by Manual § 7300.2.C's gloss on § 2120.2.A. Section 7300.2.C states that when payment is denied because the patient's condition did not contraindicate the use of other types of transportation as described in Carrier Manual § 2120.2.A, that denial "would be based on [42 U.S.C. § 1395x(s)(7)] of the Act, *not* [42 U.S.C. § 1395y(a)(1)]." (Emphasis added).

Because § 1395x(s)(7) and § 1395y(a)(1) are not coextensive, Carrier Manual § 7300 is an accurate description of the Act's waiver provision. The operation of § 1395pp is in terms limited to cases in which payment is denied "by reason of section 1395y(a)(1) or (9)," and it allows the Secretary, upon making a certain finding, to render payment "notwithstanding *such* determination" that the service was not reasonable and necessary to treatment or diagnosis and "as though section 1395y(a)(1) of this title and section 1395y(a)(9) of this did not apply." Moreover, waiver of recoupment liability is authorized under § 1395pp only "to the extent permitted by this subchapter." Section 1395pp, then, empowers the Secretary to make payments solely when a provider fails to meet § 1395y(a)(1) or (9), but otherwise satisfies all other statutory prerequisites to reimbursement. In this case, neither the Secretary nor his agent were at liberty to waive AASI's liability to repay monies disbursed for ambulance transportation that did not amount to "health or other services" in the first instance under § 1395x(s)(7).

Accordingly, the Court does not find persuasive AASI's claims that the Carrier Manual provisions and Letter 10–80 are infirm for lack of notice and comment. If the challenged provisions are substantive rules, rather than interpretative ones, then

they are necessarily invalid because they were not drafted pursuant to notice and comment rulemaking procedures. 5 U.S.C. § 553; *General Elec. Co. v. Gilbert*, 429 U.S. 125, 141, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976); *Linoz v. Heckler*, 800 F.2d 871 (9th Cir.1986). If they are interpretative, however, they are exempt from the notice and comment requirement. 5 U.S.C. § 553(b)(3)(A). "Interpretative rules are those which merely clarify or explain existing law or regulations," *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir.1983), and which "express the agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities." *Batterton v. Marshall*, 648 F.2d 694, 702 (D.C.Cir.1980). Interpretative rules are given "no more weight on judicial review than their inherent persuasiveness commands." *Id.* Substantive rules, on the other hand, "grant rights, impose obligations, or produce other significant effects on private interests" not present in the statutes, *id.,* or " 'effect a change in existing law or policy,' or remove previously existing rights." *Linoz,* 800 F.2d at 877.

As explained earlier, Manual § 7300.2.C faithfully restates the statute's restrictions on the availability of waiver. Carrier Manual § 2120.2.A is, in relevant part, a synthesis of the applicable statutes and regulations. It is taken virtually verbatim from 42 U.S.C. § 1395n(a), (a)(2) (physician must certify that "services are or were medically required"), 42 C.F.R. § 410.12(3) (physician must certify services as "medically necessary"), 42 U.S.C. § 1395x(s), (s)(7) ("medical and other health services" means "ambulance service where the use of other methods of transportation is contraindicated by the individual's condition."), and 42 C.F.R. § 410.40(b) & (b)(1) ("Medicare Part B pays for ambulance transportation only if—(1) Other means of transportation would endanger the beneficiary's health.").

Letter 10–80 generally does not impose any obligations on medical or health care providers that are not set forth in the Act itself. The Letter's particular requirement that the file must "conclusively contraindi-cate" the availability of other types of transportation is not objectionable. Understood in context, that provision warns providers that they must produce sufficient evidence to sustain a claim. AASI's unexplained complaint that Letter 10–80 establishes "very narrow" criteria for evaluating a patient's "ambulatory ability," Pl.Mem. at 34, is no more convincing. To the extent the Letter purports to speak to concerns apart from documentation, it is not substantive. As it plainly states, "Indications that the beneficiary can walk with assistance, with a walker, with crutches, or a cane or use a wheelchair *usually* mean other modes of transportation are possible." (Emphasis added). That important qualification avoids creating the sort of per se retraction of previously existing coverage found impermissible in *Linoz,* and the Letter as a whole accurately describes Congress's desire to limit ambulance use to situations where the patient's health would be endangered if other forms of transportation were employed.

### III. Conclusion

AASI might well have a valid point that, unlike doctors, ambulance carriers are not capable of making medical judgments about when beneficiaries should be transported and when they should not. It also might be right to say that in all fairness an ambulance service provider should not be denied payment when, through no fault of its own, a physician erroneously decides that the patient's condition calls for ambulance transportation. But, unfortunately for the plaintiff, the burdens that Carrier Manual sections 2120.2.A and 7300.2.C and Letter 10–80 place upon ambulance carriers who elect to participate in the Medicare Part B program are the product of congressional design, not administrative fiat. An order follows.

### ORDER

AND NOW, this 29th day of March, 1991, for the reasons set forth in this Court's Memorandum dated March 29, 1991;

**1222**

IT IS ORDERED that Plaintiff American Ambulance Service of Pennsylvania's Motion for Summary Judgment is DENIED;

AND IT IS FURTHER ORDERED that the Motion for Summary Judgment filed on behalf of all Defendants is GRANTED and that judgment is ENTERED in favor of all Defendants and against Plaintiff on Counts VI, VII, VIII, and IX of Plaintiff's First Amended Complaint.