NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2718
_____

UNITED STATES OF AMERICA

v.

NAZARIY KMET, a/k/a Naz,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cr-0319-001)
District Judge:  Honorable Nitza I. Quiñones Alejandro
_____

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2020

Before: JORDAN, RESTREPO, and FUENTES, *Circuit Judges.*

(Filed: March 31, 2020)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Nazariy Kmet owned Life Support Corporation ("Life Support"), a company that transported patients by ambulance and billed Medicare for those services. The government alleged that Kmet was billing Medicare for medically unnecessary trips and that he paid his patients kickbacks. He pled guilty to one count of conspiracy to commit health care fraud and one count of violating the anti-kickback statute. After sentencing, Kmet filed a motion under 28 U.S.C. § 2255. He alleged that his counsel was ineffective by failing to research a potential defense.

The District Court concluded that Kmet did not prove either that his lawyer's performance was deficient or that he had been prejudiced by it, but the Court nonetheless issued a certificate of appealability on the question of whether counsel's performance actually was constitutionally deficient for failing to advise Kmet of a potential defense. We agree with the District Court that Kmet's § 2255 motion fails, so will affirm.

I.    **BACKGROUND**

Between May 2010 and December 2012, Kmet, along with others, provided ambulance services and billed Medicare for medically unnecessary trips, mainly for regularly scheduled, non-emergency transportation to and from dialysis. Although he had acquired from a physician certificates of medical necessity ("CMNs") for the trips, Kmet and his co-defendants paid kickbacks to patients, many of whom were fully mobile and able to take ordinary transportation.

Kmet was indicted for conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count One); two counts of wire fraud, in violation of 18 U.S.C. § 1343

2

(Counts Two and Three); two counts of making false statements in connection with health care matters, in violation of 18 U.S.C. § 1035 (Counts Four and Five); three counts of violating the anti-kickback statute, 42 U.S.C. § 1320a-7b(b)(2)(B) (Counts Six through Eight); and four counts of money laundering, including one count in violation of 18 U.S.C. § 1956 (Count Nine) and three counts in violation of 18 U.S.C. § 1957 (Counts Ten through Twelve**).**  Represented by counsel, he pled guilty to conspiracy to commit health care fraud (Count One) and violation of the anti-kickback statute (Count Seven).

Prior to sentencing and represented by new counsel, Kmet filed a motion to withdraw his guilty plea.  *United States v. Kmet*, 667 F. App'x 357, 358 (3d Cir. 2016).  "He stated that he began researching his case after pleading guilty and concluded that he was innocent."  *Id.*  The District Court denied the motion and sentenced him to 72 months' imprisonment.  *Id.*  We affirmed.  *Id.* at 358-59.

After his direct appeal, Kmet filed the § 2255 motion at the center of this appeal. He argued that his counsel "failed to conduct basic research into the law governing the charges brought against [him] and but for counsel's failures, [he] would not have consented to pleading guilty on the terms provided in the September 3, 2014 plea agreement."  (App. at 42-43 (internal quotation marks and citations omitted).)  More specifically, Kmet argued that, under the regulations and case law in place at the time, he had a defense that his conduct was not illegal because a CMN was sufficient to establish medical necessity for the ambulance trips.

The District Court referred the motion to a Magistrate Judge who held a hearing on the motion and recommended that the District Court deny it and not issue a certificate

3

of appealability. The District Court adopted the report and recommendation in part, denying the motion. The District Court did, however, issue a certificate of appealability on the question of whether counsel's performance was ineffective for failing to advise Kmet of the potential defense that he did not commit health care fraud because he had CMNs for the ambulance services that were the subject of the prosecution.

This timely appeal followed.

## II.    DISCUSSION[1]

In *Strickland v. Washington*, the Supreme Court established a two-part test for ineffective assistance of counsel. The first part requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. 668, 687 (1984). The second part requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "When addressing a guilty plea, counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer."

---

[1] The District Court had jurisdiction under 28 U.S.C. § 2255, and we have jurisdiction under 28 U.S.C. § 2253. We review *de novo* a decision whether to grant or deny a petition under 28 U.S.C. § 2255. *United States v. Cleary*, 46 F.3d 307, 309-10 (3d Cir. 1995).

*United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotation marks omitted).

We agree with the District Court that Kmet cannot meet either prong of the *Strickland*

test.

First, Kmet's lawyer was not constitutionally ineffective.  At the time of Kmet's

conduct, the relevant Medicare regulation, 42 C.F.R. § 410.40, provided as follows:

> (d) Medical necessity requirements—
>
> (1) General rule. Medicare covers ambulance services … only if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated.  The beneficiary's condition must require both the ambulance transportation itself and the level of service provided in order for the billed service to be considered medically necessary.  Nonemergency transportation by ambulance is appropriate if either: the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically required.  Thus, bed confinement is not the sole criterion in determining the medical necessity of ambulance transportation.  It is one factor that is considered in medical necessity determinations.…
>
> (2) Special rule for nonemergency, scheduled, repetitive ambulance services. Medicare covers medically necessary nonemergency, scheduled, repetitive ambulance services if the ambulance provider or supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished.

42 C.F.R. § 410.40 (2012).

When Kmet pled guilty, there was conflicting case law regarding whether a CMN

alone was sufficient under the regulation to justify the kinds of trips Life Support was

providing to dialysis patients.  On one side, two unreported cases from the Middle

District of Tennessee concluded that a CMN was sufficient.  *MooreCare Ambulance*

5

*Serv. LLC v. Dep't of Health and Human Servs.,* No. 09-78, 2011 WL 839502, at *3

(M.D. Tenn. Mar. 4, 2011); *First Call Ambulance Servs., Inc. v. Dep't of Health &*

*Human Servs.,* No. 10-247, 2012 WL 769617, at *6 (M.D. Tenn. March 8, 2012). Other

cases, however, including a reported case from the Fifth Circuit, concluded the opposite.

*See United States v. Read*, 710 F.3d 219, 228 (5th Cir. 2012) ("Possession of a CMN—

even one that is legitimately obtained—does not permit a provider to seek reimbursement

for ambulance runs that are obviously not medically necessary."); *Am. Ambulance Serv.*

*of Penn. Inc. v. Sullivan,* 761 F. Supp. 1211, 1217 (E.D. Pa. 1991), *aff'd,* 947 F.2d 934

(3d Cir. 1991) (interpreting earlier version of ambulance regulations and concluding that

the "statute's language emphasizes that physician certification is a necessary, but not

sufficient, predicate to reimbursement").[2]

---

[2] On the day of Kmet's plea, a decision in the Eastern District of Pennsylvania rejected the argument that Kmet now raises. *See United States v. Hlushmanuk,* No. 12-327, 2014 WL 5780814, at *7 n.8 (E.D. Pa. Nov. 6, 2014) ("[Defendant] appears to suggest that he was entitled to rely on Certificates of Medical Necessity…. [W]here, as here, Hlushmanuk admitted that he knew that the transports were not medically necessary, he cannot rely on any CMNs that he may have received to establish his innocence of the charges against him and the impropriety of his guilty plea."). In 2017, we issued a split decision in an unreported opinion, with the majority citing the two decisions from the Middle District of Tennessee and agreeing that a CMN alone was sufficient to support reimbursement for an ambulance trip. *See United States v. Advantage Med. Transport, Inc.*, 698 F. App'x 680, 689 (3d Cir. 2017) ("Valid, time-appropriate certificates of medical necessity from physicians were on file for each of these three beneficiaries. Under the regulation in effect at the time and as interpreted by at least two district courts, that was all that was needed to make these transports medically necessary."). Because *Hlushmanuk* came out on the same day as Kmet's plea and *Advantage Medical Transport* came out years later, they could not have informed the advice Kmet's lawyer gave him one way or another. *Cf. Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

The Department of Health and Human Services decided an amendment to 42 C.F.R. § 410.40(d)(2) was needed to make clear that a CMN cannot justify ambulance services that are not genuinely medically necessary. *See* 77 Fed. Reg. 68892-01, 69161 (Nov. 16, 2012) ("Despite these statutory provisions and the language of the present regulation at § 410.40(d)(2) that we believe already requires both medical necessity and a [CMN], some courts have recently concluded that § 410.40(d)(2) establishes that a sufficiently detailed and timely order from a beneficiary's physician, to the exclusion of any other medical necessity requirements, conclusively demonstrates medical necessity with respect to nonemergency, scheduled, repetitive ambulance services."). The regulation was amended to add that "[t]he presence of the signed physician certification statement does not alone demonstrate that the ambulance transport was medically necessary." 42 C.F.R. § 410.40(d)(2)(ii) (2013) (current version 42 C.F.R. § 410.40(e)(2)(ii) (2020)). That amendment went into effect January 1, 2013, after Kmet's conduct but before he pled guilty.

At the time of Kmet's lawyer's advice to plead guilty, it was not at all clear that the defense Kmet now wishes he had made would have been accepted by the sentencing court, given that the only support for that defense was two unreported cases from a district court in another circuit, whereas other substantial authority, including authority from within this circuit, supported the opposite interpretation. Notably, the cases Kmet relied on involved administrative appeals regarding overbilling of Medicare, not criminal conduct, and, as the Magistrate Judge here observed, "they do not support the conclusion that a CMN provides carte blanche in a criminal context." (App. at 45.)

7

In addition, the Magistrate Judge made clear that she credited the testimony of Kmet's lawyer when he said that presenting an "I had a CMN" defense would have been unsuccessful because the evidence against Kmet was overwhelming. For example, there was evidence that Life Support transported patients in personal vehicles, taxis, and via public transportation; that "all but one patient could walk or safely be transported by other means;" that Life Support's ambulances did not pass state inspection and were not equipped with necessary medical equipment; and that Life Support paid patients to continue to use its services. (App. at 47.) And the defense would not have defeated several of the other charges, including the kickback charges. The decision not to pursue the CMN defense thus does not mean that counsel was ineffective, according to the standard of ineffectiveness under *Strickland*.

Second, Kmet has not shown that he was prejudiced – that is, that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. First, the District Court rejected Kmet's testimony that he would not have pled guilty but for his lawyer's supposed errors. In her report and recommendation, the Magistrate Judge said that "[a]lthough Defendant testified that he would have chosen to go to trial if [counsel had] informed him of the possibility of raising a CMN defense, the Court does not credit this testimony." (App. at 53.) As the Magistrate Judge explained, a number of factors contributed to Kmet's decision to plead guilty, including that Kmet had reviewed the discovery with his lawyer, and that the lawyer had explained that the government would

8

dismiss counts, and that consequently, Kmet's sentencing exposure would be drastically reduced if he pled guilty.

Even if counsel had advised Kmet about the potential defense and Kmet decided to proceed to trial, it is unlikely that the defense would have been successful. As explained above, the case law at the time indicated that the District Court may well have rejected the defense, and there also was overwhelming evidence against Kmet. Additionally, the CMN defense would not have been a defense to several of the charges against Kmet, so continuing to trial would have risked conviction on all twelve counts and would likely have resulted in a longer sentence. All of this persuades us that Kmet did not suffer prejudice. *See Hill*, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.").

## III.   CONCLUSION

For the foregoing reasons, we will affirm the District Court's order denying Kmet's § 2255 Motion to Vacate, Set Aside, or Correct Sentence.