UNITED STATES of America, Plaintiff-Appellee,

v.

Gerhard T. BECK, M.D., Defendant-Appellant.

No. 84–3650.

United States Court of Appeals, Eleventh Circuit.

April 30, 1985.

Gerhard T. Beck, Jr., Washington, D.C., for defendant-appellant.

Steven J. Edelstein, Asst. Regional Atty., Dept. of Health & Human Services, Atlanta, Ga., for plaintiff-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, and ALLGOOD *, District Judge.

HATCHETT, Circuit Judge:

This appeal involves an action brought by the United States of America (government) for recoupment of overpayments made to a physician under Part B of the Medicare Act, 42 U.S.C.A. §§ 1395j–1395w (West 1983). On cross motions for summary judgment, the district court found that the action is timely and entered judgment for the government. We affirm.[1]

### FACTS

Blue Cross and Blue Shield of Florida, Inc. (Blue Cross) is a "carrier," or fiscal intermediary, engaged by the Secretary of the Department of Health and Human Services to administer Part B of the Medicare program in Florida. *See* 42 U.S.C.A. § 1395u. In May, 1974, Blue Cross made a preliminary determination that appellant, Dr. Gerhard T. Beck, may have been overpaid for claims which he filed in 1972. On August 2, 1974, Blue Cross notified Beck that it was reopening his 1972 claims to conduct a post-payment review. Pursuant to Blue Cross's request, on May 7, 1975, Beck submitted his medical records on the 1972 claims. On June 5, 1975, Blue Cross forwarded Beck's 1972 claims, and the

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Part A of the Medicare Act, 42 U.S.C.A. §§ 1395c–1395i–2 (West 1983), covers hospital insurance benefits. Part A expressly provides for post-payment audit and review. 42 U.S.C.A. § 1395g. Part B, however, does not. The authorities relied upon by the district court in holding that the government's cause of action in this case accrued upon completion of the post-payment audit and review process apply only to cases arising under Part A of the Medicare Act. The analysis of cases arising under Part B is guided by *United States v. Kass*, 740 F.2d 1493 (11th Cir.1984), and *United States v. Diaz*, 740 F.2d 1491 (11th Cir.1984), both of which were decided after the district court rendered its decision in this case.

medical records which Beck submitted, to the Florida Medical Foundation (Foundation) for "peer review." The Foundation then submitted this information to the local peer review committee in Beck's area, Duval County, Florida. On August 4, 1975, Beck met with the peer review committee to discuss the claims. On September 9, 1975, the local peer review committee forwarded its report to the Foundation and to Beck.

The Foundation's state peer review committee reviewed Beck's file and, on March 19, 1976, reported to Beck and to Blue Cross that it had adopted the local peer review committee's report which found "gross overutilization" of office visits and ancillary services. The Foundation offered Beck an opportunity to meet with the state peer review committee and to submit additional information to substantiate his claims. A meeting was scheduled for October 2, 1976. On September 15, 1976, Beck telephoned Blue Cross and withdrew his request for a meeting with the state peer review committee. On that date, Beck also visited the Foundation's office and advised its staff that he was withdrawing from the peer review process. Accordingly, on September 15, 1976, Beck's file was returned to Blue Cross for final disposition. The next day, Beck wrote to the Florida Medical Foundation and formally withdrew from any further participation in the peer review process.

Beck's 1972 claims were subjected to further review by Blus Cross's in-house medical consultants. Inasmuch as patterns of overutilization similar to those found in Beck's 1972 claims were also observed in his 1973 claims, the in-house consultants applied the peer review committees' findings with regard to the 1972 claims to Beck's 1973 claims, as well. It was determined that the overpayments totaled $10,066.43; $9,731.84 for 1972 and $334.59 for 1973.

On October 10, 1977, Blue Cross notified Beck of the amount of overpayments for 1972 and 1973 and demanded repayment. The notice also advised Beck of his right to seek further administrative review of the overpayment determination by submitting additional information to substantiate his claims and by filing a written request for a hearing within six months from the date of the notice.

Despite the fact that Beck's request for a fair hearing was not made until some seven months later and, therefore, was untimely, Blue Cross agreed to meet with Beck. A meeting was scheduled for June 16, 1978, but was postponed because Beck became ill. The meeting was subsequently held on November 3, 1978. After the November meeting, Blue Cross's in-house medical consultants reevaluated Beck's 1972 claims and reduced the amount of overpayment for 1972 to $5,060.56, bringing the total amount of overpayments for 1972 and 1973 down to $5,395.15.

On December 12, 1978, Beck was notified of the amount of overpayment and advised of his right to seek administrative review of the revised determination. A follow-up letter was sent to Beck on February 12, 1979. Beck did not respond to either letter. By letter dated June 21, 1979, Beck was afforded a final opportunity to settle this matter without resort to litigation. Beck failed to avail himself of this opportunity. The United States finally filed suit on April 24, 1981, seeking recoupment of the $5,395.15 in overpayments.

## PROCEDURAL HISTORY

The district court, on cross motions for summary judgment, concluded that Blue Cross's reopening of its initial determinations of Beck's 1972 and 1973 claims was for "good cause" in accordance with 42 C.F.R. § 405.841(b) (1984). It also concluded that the applicable six-year statute of limitations under 28 U.S.C.A. § 2415(a) (West Supp.1984) began to run on the date that the United States had a right to enforce its claim. The district court found that the government's right to enforce its claim did not accrue until the administrative post-payment review and audit process was completed and a final determination made that Beck had overutilized the Medi-

care program. That date was not until sometime after September 15, 1976, when the peer review process had been completed, and the Foundation returned Beck's file to Blue Cross.

## CONTENTIONS OF THE PARTIES

Beck contends that he is entitled to judgment as a matter of law for two reasons. First, he argues that Blue Cross's reopening of its initial determinations of the amounts payable on his 1972 and 1973 claims was improper under the governing regulations.

Blue Cross reopened the claims more than twelve months after it had made payment on the claims. Blue Cross may reopen initial determinations of claims more than twelve months after payment has been made, only upon a showing of "good cause" for doing so. 42 C.F.R. § 405.841 (1984). "Good cause" includes newly discovered and material evidence. 20 C.F.R. § 404.958(a) (1975) (current version at 20 C.F.R. § 404.989(a)(1) (1984)).

Beck argues that the physician utilization profiles relied upon by Blue Cross to reopen his claims were merely statistical compilations of data in Blue Cross's possession at the time that Blue Cross made the initial determinations and, therefore, were not "new" evidence within the meaning of 20 C.F.R. § 404.958(a). Thus, he argues, the reopening of his claims was not for "good cause." Beck also maintains that he was not given timely notice of the reopening of the initial determinations, as is required by 42 C.F.R. § 405.842 (1984). He contends that the government is bound by its initial determinations of the amounts payable on his 1972 and 1973 claims. 42 C.F.R. § 405.806 (1984).

Beck further argues that even assuming that Blue Cross properly reopened his 1972 and 1973 claims, the instant action is barred by the applicable six-year statute of limitations under 28 U.S.C.A. § 2415(a).

The government argues that the physician utilization profiles upon which it relied in reopening Beck's claims were "new" evidence within the meaning of 20 C.F.R.

§ 404.958(a), and that, therefore, the initial determination was properly reopened.

Moreover, the government argues, Beck did not challenge the reopening and the revised determination at the administrative level when he had an opportunity to do so. Therefore, the revised determination is final and binding and is not subject to judicial review. 42 C.F.R. § 405.842(b). The government also argues that the statute of limitations was tolled until some time after September 15, 1976, when the peer review process was completed.

## ISSUES

The issues presented for our consideration are: (1) whether Blue Cross properly reopened its initial determinations of Beck's 1972 and 1973 claims; (2) whether Beck has waived his right to challenge Blue Cross's reopening of its initial determinations of his 1972 and 1973 claims; and (3) whether this action is barred by the applicable six-year statute of limitations under 28 U.S.C.A. § 2415(a).

## DISCUSSION

A. *Reopening of Initial Determinations*

■ First, we must consider whether Beck waived his right to challenge the reopening of the initial determinations of his 1972 and 1973 claims. For if Beck has waived that right, the revised determinations are "final and binding," 42 C.F.R. § 405.842(b), and not subject to judicial review, *see United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982).

On October 10, 1977, Blue Cross notified Beck of the amount of overpayments on his 1972 and 1973 claims. The notice advised Beck of his right to seek administrative review of the revised determinations. The letter stated:

If you feel that further consideration should be given to any of the overpayment cases on the enclosed listings, the Medical Consultants will be happy to pro-

vide further review upon receipt of copies of appropriate office records or other information not previously furnished.

In addition to further medical review, you are also entitled to file a written request for a fair hearing on the overpayment cases on the enclosed listings within six months from the date of this letter if you feel that there is a basis for further review or that you have not been overpaid. Such hearings are held to determine whether or not the carrier has followed the Medicare Law, regulations and guidelines established by the Social Security Administration.

Some seven months later, Beck requested to meet with a representative of Blue Cross. Although Beck's request was untimely, Blue Cross agreed to meet with him. After a November 3, 1978 meeting with Beck, Blue Cross reevaluated Beck's 1972 claims and reduced the amount of overpayment. Beck was notified of the amount of the revised determination by letter dated December 12, 1978. He was also advised of his right to seek administrative review of that determination. The letter, addressed to Beck's attorney, stated: "If Dr. Beck feels that some of the cases still at issue warrant further review, he may wish to again meet with a carrier medical consultant, or he may request a hearing before a carrier hearing officer within six months from the date of this letter." Despite two additional letters from Blue Cross, Beck failed to pursue his administrative remedies.

Beck now maintains that Blue Cross's reopening of its initial determinations of both his 1972 and 1973 claims was improper under the regulations. Neither the statute nor the regulations provide a claimant an opportunity to challenge the reopening of an initial determination at the time of the reopening. The regulations do provide, however, a claimant an opportunity to challenge the revision of an initial determination by requesting a hearing:

The revision of a determination (see section 405.841) shall be final and binding upon all parties thereto unless a party

files a written request for a hearing with respect to a revised determination when the amount in controversy is $100 or more.

42 C.F.R. § 405.842(b).

As Blue Cross stated to Beck in its October 10, 1977 letter, hearings on revised determinations "are held to determine whether or not the carrier has followed the Medicare Law, regulations, and guidelines established by the Social Security Administration." Such a hearing would have been the proper forum for Beck to challenge the validity of the reopening of Blue Cross's initial determinations of his 1972 and 1973 claims and the timeliness with which he was notified of the reopening of the initial determinations. Beck is not entitled to judicial review of the overpayment determinations. 42 C.F.R. § 405.842(b); *see United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982) (carrier determinations of amount of benefits payable under Part B of Medicare Act not reviewable in Court of Claims).

Since Beck cannot now challenge the validity of Blue Cross's reopening of its initial determinations of his 1972 and 1973 claims, we need not reach the issue of whether Blue Cross properly reopened those initial determinations.

### B. *The Statute of Limitations*

The statute of limitations applicable to suits brought by the government to recoup overpayments on Medicare Part B claims is 28 U.S.C.A. § 2415(a). *United States v. Kass*, 740 F.2d 1493 (11th Cir.1984); *United States v. Diaz*, 740 F.2d 1491 (11th Cir.1984); *United States v. Bragg*, 493 F.Supp. 470 (M.D.Fla.1980). Section 2415(a) provides:

Subject to the provisions of section 2416 of this title, and [other exceptions not relevant here], every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final

decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later....

28 U.S.C.A. § 2415(a).

The government concedes that this action was not filed within one year of the final administrative action. Thus, we must consider whether the action was filed "within six years after the right of action accrue[d]."

Our initial inquiry in considering the timeliness of this action is to decide when the government's right of action accrued. *Kass*, 740 F.2d at 1497.

Carriers are prohibited from making payment on claims which are not "reasonable and necessary." 42 U.S.C.A. § 1395y(a)(1) (West 1983); 42 C.F.R. 405.310(k) (1984). The incredibly large volume of Medicare Part B claims, however, makes it unfeasible for carriers to routinely require, in advance of payment, full documentation of every claim.[2] In an effort to promptly and efficiently process the large volume of Part B claims, carriers rely, in the first instance, upon the physician's certification of the medical necessity of the services rendered. 42 U.S.C.A. § 1395n(a)(2)(B). "This certification requirement puts the doctor on notice that the assignment he takes from the patient is valid only where the services provided are medically necessary." *Szekely v. Florida Medical Association*, 517 F.2d 345, 348 (5th Cir.1975), *cert. denied sub nom. Szekely v. Mathews*, 425 U.S. 906, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).[3]

▮ Actions for recoupment of overpayment on Medicare claims are contract actions. Thus, the government's cause of action accrues at the time of breach, which in such cases is the time that payment is made for services which are not reasonable and necessary. *Kass*, 740 F.2d at 1497 (citing *Bragg*, 493 F.Supp. at 475). The statute of limitations runs from the date of payment, unless its running is tolled by 28 U.S.C.A. § 2416(c).

Section 2416 provides:

For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

....

(c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances....

28 U.S.C.A. § 2416(c).

Our next inquiry then is to determine at what point the government had the requisite material facts regarding its cause of action. We concluded in *United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir.1984), that "it is not necessary that relevant officials have all details of a claim before the statutory period begins to run; once the facts making up the 'very essence of the right of action' are reasonably known, the section 2416 bar is dropped." The "very essence" of a right of action for recoupment of overpayments made on Medicare claims is the payment of claims which are not "reasonable and necessary." Thus, our inquiry must focus on the point at which the government became aware, or reasonably could have become aware, that Beck had been paid for claims which were not "reasonable and necessary."

A carrier determines the reasonableness and necessity of services rendered in connection with Medicare Part B claims by comparing a physician's practice to the prevailing practices of similar practitioners in the physician's geographical area. This is the purpose for which physician utilization profiles were developed. Utilization profiles alert a carrier to the *possibility* of overutilization of the Medicare program by a physician. It is only when a physician has been given an opportunity to explain why certain services were rendered and the

---

2. In 1980, for instance, Medicare carriers processed *158 million* Part B claims. *United States v. Erika, Inc.*, 456 U.S. 201, 208 n. 11, 102 S.Ct. 1650, 1654 n. 11, 72 L.Ed.2d 12 (1982).

3. Fifth Circuit opinions rendered on or before September 30, 1981, are binding precedent of the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

carrier has reviewed the claims individually that a determination can be made as to the reasonableness and necessity for the services. A carrier is often unable to make this determination on its own. It is in these instances that the peer review process becomes particularly important.

The peer review process gives both the carrier and the physician the benefit of the expertise and knowledge of other practitioners in the physician's geographical area. The reports of peer review committees are only advisory and not binding upon the carrier. The peer review process, however, provides the carrier with an accurate assessment of whether or not a physician's practice is consistent with medical practices prevailing in that physician's geographical area. If a physician's practice exceeds the norm, and the physician cannot offer a satisfactory explanation for the deviation, the carrier may conclude that the services rendered were not "reasonable and necessary," and that the physician has overutilized the Medicare program.

■ We hold that the facts material to a cause of action for recoupment of overpayments on Beck's 1972 claims became known, or reasonably could have become known, to the government some time shortly after September 15, 1976, when Blue Cross received the Foundation's report that Beck's practices far exceeded the norms of similar practitioners in Beck's geographical area.

At some time between that point and October 10, 1977, when Blue Cross notified Beck of the 1972 and 1973 overpayments, Blue Cross discovered a pattern of overutilization in Beck's 1973 claims similar to the pattern of overutilization found in his 1972 claims. Blue Cross applied the Foundation's findings with regard to Beck's 1972 claims to his 1973 claims. We hold that it was at that point when the 1972 findings were applied to the 1973 claims that the facts material to a cause of action for recoupment of overpayments on Beck's 1973 claims became known, or reasonably could have become known, to the government.

■ The government's cause of action accrued, and the six-year statute of limitations under 28 U.S.C.A. § 2415(a) began to run, on the various dates on which the government paid Beck on his 1972 and 1973 claims. The statute of limitations was tolled under 28 U.S.C.A. § 2416(c), however, until the government knew, or reasonably could have known, that Beck had been paid for services which were excessive under the norms prevailing in Beck's geographical area, and which were therefore not "reasonable and necessary." The various points at which the statute of limitations began to run fall between September 15, 1976, and October 10, 1977. The complaint in this action was filed on April 24, 1981. Thus, we hold that this action was filed well within the six-year statute of limitations period prescribed in 28 U.S.C.A. § 2415(a).

**AFFIRMED.**