**ATLANTIC RICHFIELD COMPANY,**
Plaintiff,

v.

**Manuel LUJAN, Jr., Secretary,**
**Department of the Interior,**
**et al., Defendants.**

No. 89–C–892–B.

United States District Court,
N.D. Oklahoma.

Sept. 9, 1992.
Order on Motion to Alter or Amend
Dec. 22, 1992.

Teresa B. Adwan, Joseph W. Morris, David L. Bryant, Gable & Gotwals, Tulsa, OK, J. Berry St. John, Jr., Kerry M. Massari, Deborah Bahn Price, Liskow & Lewis, New Orleans, LA, for plaintiff.

Kathleen Bliss Adams, Tony Graham, U.S. Atty., M. Lujan, Jr., Phil Pinnell, Nancy Blevins, Asst. U.S. Attys., Tulsa, OK, Margaret Sweeney, Dept. of Justice, Washington, DC, for defendants.

## ORDER

BRETT, District Judge.

This matter comes on for consideration of Plaintiff's Motion for Summary Judgment and Defendants' Cross–Motion for Summary Judgment. These motions were originally filed January 21, 1992,[1] along with supporting memorandums that addressed a plethora of issues. Reply memorandums were filed April 6, 1992, by both parties. The Court heard oral arguments on the pending motions on June 19, 1992. At that hearing, the Court determined that it should first address the statute of limitations issue, in order to allow the parties to file an interlocutory appeal along with *Phillips Petroleum Co. v. Lujan*, No. 89–C–914–B (N.D.Okla. October 28, 1991), if they desired.

The Court provided the parties with another opportunity to specifically address the statute of limitations issue. The parties were given until July 6 to file an agreed statement of facts [2], with briefs due July 16 and responses due July 27. The parties failed to submit an agreed statement of facts. Instead, the Defendants submitted their own statement of facts [3], which the Plaintiff moved to strike.[4] The briefs and responses were timely filed. Due to the parties inability to agree on a statement of facts, the Plaintiff's Motion to Strike the Defendants' Statement of Facts will be granted. The Court will address the statute of limitations question based on the uncontroverted facts appearing in the remaining record that are relevant to this issue.

### I. Background

Plaintiff, Atlantic Richfield Company ("ARCO"), is the lessee of an Indian lease which produces natural gas upon which ARCO pays a royalty. The Defendants, Secretary of the Department of Interior Manuel Lujan, Director of the Minerals Management Service ("MMS") Barry Williamson and Area Manager of the MMS Dallas Area compliance office Nick Kelly, are sued by ARCO as a result of an Administrative Order (the "Order") issued by the Defendants,[5] dated September 25, 1989.

This Order [6] notified ARCO that it had deducted an incorrect manufacturing allow-

---

1. Shortly thereafter, both parties filed a corrected copy of their respective memorandum in support of summary judgment.

2. At the June 19 hearing, the parties assured the Court that they could at least agree on the facts so that the statute of limitations question could be addressed.

3. Defendants' statement of facts primarily relates to the volume of work the Minerals Management Service ("MMS") handles. Attached to the Statement is a 365 page report which lists all the adjustments made by ARCO since October 1, 1983, to production sales value and royalty value previously reported to MMS for production months before October 1, 1983.

4. Plaintiff contends that the facts listed in the Defendants' Statement of Facts are irrelevant to the statute of limitations question. In the alternative, the Plaintiff asks for more time to respond due to the detailed nature of the Defendants' facts.

5. The contested Order was issued by the Dallas Area Compliance Office of the Royalty Compliance Division of the Minerals Management Service, United States Department of the Interior.

6. The Order arose out of an MMS' audit of ARCO's royalty payments on Lease 601–006438–0 for the period October 1, 1980, through September 30, 1983.

ance[7] from past royalty payments on the audited lease. Based on this information, the MMS concluded that a systemic failure existed in ARCO's royalty calculation method. Thus, it ordered ARCO to recalculate royalties on gas produced from all its Indian and Federal onshore oil and gas leases using a cost-based manufacturing allowance for the period October 1, 1980, through February 29, 1988, and pay any resulting deficiencies.

## II. Statute of Limitations

ARCO filed this action October 24, 1989, seeking judicial review of the Defendants' Order.[8] ARCO argues that the Order is barred in part by the statute of limitations, which provides:

> Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed *within six years after the right of action accrues* or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later.... (emphasis added).

28 U.S.C. § 2415(a).

ARCO reasons that the portion of the MMS Order that requires the payment of additional royalties for the period October 1980, through September 25, 1983, should be vacated as untimely (Supplemental Memorandum of Atlantic Richfield Company Addressing the Statute of Limitations, p. 1) (hereinafter "Plaintiff's Brief").

ARCO argues that § 2415 bars these claims because the royalty payments were due more than six years before the MMS order was issued.[9]

According to ARCO, there are only two material facts relating to the statute of limitations issue and they are both undisputed (Plaintiff's Brief, p. 3). The first fact is the date on which the royalties were due, October 1980 through September 25, 1983. The second fact is the date the MMS Order was issued, September 25, 1989. ARCO contends these two facts provide sufficient grounds for granting summary judgment as to the pre-September 25, 1983, claims ("disputed claims")[10].

## III. Accrual of Claim

■ The Defendants assert two basis for finding that the disputed claims are not time-barred. First, Defendants argue that their claim for royalties did not accrue, and thus the statute of limitations did not begin running, until after the audit was completed (Defendants' Supplemental Brief on the Statute of Limitations, p. 24) (hereinafter "Defendants' Brief").

The Defendants direct the Court's attention to Medicare Part A payment cases. Under the Medicare Part A program, a provider of services receives payment in the form of interim reimbursements from organizations which serve as fiscal intermediaries between the government agency and the provider. The interim payments are determined on the basis of estimated costs for a given accounting period. The provider later submits reports of the actual costs incurred. The fiscal intermediary must then audit the reports and compare estimated payments to the amounts

---

**7.** The Order stated that ARCO had deducted an automatic two-thirds manufacturing allowance from its royalty payments rather than a cost-based allowance. The correct method of calculating the manufacturing allowance is in dispute in this case but will not be addressed at this time.

**8.** ARCO also filed an administrative appeal with the MMS Director on the same date. ARCO did not request a stay of its administrative appeal but did request that the MMS "postpone or stay the effective date for compliance with the Order pending judicial review." The MMS granted

ARCO's request (Administrative Record, Exhibits 1–3).

**9.** The parties agree that the statute of limitations does not bar the Defendants' claim for royalties from September 25, 1983 through February 1988.

**10.** ARCO is actually disputing *all* of the Defendants' claims for additional royalties. However, the only claims being addressed today are those disputed on statute of limitations grounds.

due on the basis of actual costs, with a final adjustment made based on the audit results. If the provider has been overpaid, the Government has a claim for reimbursement (Defendants' Brief, p. 25).

Some courts have concluded that in such Medicare Part A cases, the statute of limitations did not begin to run until "the rights and liabilities of the parties were determined in the audit." *United States v. Withrow*, 593 F.2d 802, 805 (7th Cir.1979); *United States v. Gravette Manor Homes*, 642 F.2d 231 (8th Cir.1981). The Defendants contend the same approach should be used in royalty payment cases by arguing that the correct amount owed to the Government is unknown in both cases until an audit is completed.

This Court addressed this same argument in *Phillips Petroleum Co. v. Lujan*, No. 89–C–914–B, (N.D.Okla. Oct. 24, 1991) (*"Phillips III"*), and rejected the analogy to Medicare cases.

> Cases interpreting payments made under Part A of the Medicare Act relate to estimated payments made to medical providers without delay. The Medicare statutory scheme requires these estimated payments to be followed by mandatory audits in order to settle the accounts with the medical providers. *United States v. Graham*, 471 F.Supp. 123, 124 (S.D.Tex.1979). The right of action in such cases is not known until the audit is completed by a "fiscal intermediary."

Order dated Oct. 24, 1991, at 7.

The Defendants question the significance of the distinction between "estimated payments" subject to audit and payments of an "actual amount due" subject to audit and ask this Court to rethink its ruling in *Phillips III*. The Defendants stress that in both situations (i.e. Medicare cases and royalty payment cases) the Government is unaware of whether it has a claim until an audit is completed.

The Court is satisfied that the Medicare cases are not analogous to royalty payment claims. The key distinction is the point at which the Government is entitled to its money and can lawfully assert a claim for such money. A cause of action accrues "when the claim first could have been sued upon." *United States v. Skidmore, Owings and Merrill*, 505 F.Supp. 1101, 1104 (S.D.N.Y.1981). Thus, the accrual date is the date of the breach of the contract. *Id.*

In the Medicare cases, the interim payments are made to the provider *during* the accounting period, based on an estimate of what the provider's actual costs will be for the period.[11] The Government is obviously not entitled to a refund for overpayment at the time the interim payment is made because the provider's actual costs are still being incurred. The provider submits reports of his actual costs after the accounting period is over and then an audit is conducted to determine if the Government is entitled to any refund. It is not until this determination is made, that any refund is "due" and the Government is entitled to its money. No duty is owed or can be breached until after the Medicare audit is completed. In the instant case, the royalty payments were "due" at the end of the month following the month of production. 30 C.F.R. § 218.50. Presumably, the month is provided to allow the lessee enough time to calculate the correct amount of royalty to be paid. ARCO was required to calculate and pay the amount of royalty actually owed for the previous month by the due date.[12] Although the Government was relying on ARCO to initially calculate the correct amount of royalty, the Government was entitled to the full and correct amount of royalty on the due date. This is evident from the fact that

---

**11.** The interim payments procedure was established under the terms of 42 U.S.C. § 1395f(b) and 20 C.F.R. § 405.451(a).

**12.** MMS Form 2014, on which ARCO submitted its monthly report of sales and royalty remittance, stressed this fact. It included the following:

> **WARNING:** PUBLIC LAW 97–451 PROVIDES CIVIL AND CRIMINAL PENALTIES FOR FALSE OR INACCURATE REPORTING. It also required the preparer of the form to sign the document below the following statement: I have read and examined the statements in this report and agree they are accurate and complete.

interest can be, and is, charged on royalty underpayments, from the date the payment was due. *See* 30 U.S.C. § 1721(a); *See also* 30 C.F.R. § 218.54.

Defendants argue that the underpayments were not "due" until the audit was completed and the Order was issued.[13] There is simply no support for this theory. Neither a demand for payment, nor an awareness of any underpayment, is necessary for a cause of action to accrue. The Government has a claim as soon as the lessee breaches its duty to pay the correct royalty.

The Court concludes that the Defendants' claims for underpayment of royalties accrued on the date the payments were originally due and not on some later date when the Defendants' completed the audit or issued the Order. It is quite simple, and well-settled, that a contract action accrues when the payment becomes due. *See Generally*, 51 Am.Jur.2d *Limitation of Actions* § 126 (1970). Thus, the Defendants' claims for royalty payments due before September 25, 1983, are time-barred unless the statute of limitations was tolled for some period of time.

### IV. *Tolling of the Statute of Limitations—§ 2416(c)*

The Defendants next argument is that "[e]ven if the Government's right of action accrued when the royalty payments were originally due, the running of the limitations period should be tolled until after the completion of an audit" (Defendants' Brief, p. 8). This argument is based on 28 U.S.C. § 2416(c) which provides:

> For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which ...
>
> (c) facts material to the right of action are not known and reasonably could not be known by an official of the United

States charged with the responsibility to act in the circumstances....

The Defendants contend that § 2416(c) tolls their claim until an audit is completed because the material facts (i.e. the existence of an underpayment) "are not known and reasonably could not be known" prior to this time.

ARCO does not contest the Defendants' contention that the MMS did not know about the underpayment prior to the completion of the audit. Therefore, the Court's resolution of the tolling issue rests on its interpretation of the phrase "reasonably could not be known" in § 2416(c). The Defendants argue that the MMS could not have known about the alleged underpayment until the audit was performed.

The crux of the Defendant's argument is that the immense number of leases and royalty payments handled each month prevent the MMS from knowing if it has a claim for underpayment until an audit is completed (Defendants' Brief, p. 10). The Defendants further suggest that the process of calculating royalties is so complex and time-consuming that even the lessees do not have the complete information necessary to arrive at the correct royalty amount by the due date.[14] (Defendants' Brief, p. 12). The Defendants assert that the MMS could not have known if the original payment was correct if ARCO, the lessee, did not know. Defendants thus ask this Court to find that the statute of limitations was tolled until MMS reasonably knew of the underpayment, in September, 1989. (Defendants' Brief p. 17).

The Defendants again direct the Court to Medicare cases as support for the tolling argument. In Medicare Part B cases, reimbursement payments are made to physicians for medical expenses (in contrast to interim estimated payments made to hospitals under Medicare Part A, discussed

---

**13.** Defendants' contend that the "ultimate rights and liabilities of the parties are determined in the audit ... [and] therefore, the government's right of action in this case did not accrue, and the statute of limitations should not run, until an audit has been completed" (Defendants' Brief, p. 27).

**14.** Defendants point out that lessees, including ARCO, are regularly making corrections to sales reports and royalty payments months and years after the fact.

above). In *United States v. Beck*, 758 F.2d 1553 (11th Cir.1985), the court held that the Government's claim accrued on the date the overpayment was made but was tolled until the Government reviewed the reasonableness of the services and learned of the possible overpayment. The *Beck* court concluded that due to the "incredibly large volume of Medicare Part B Claims," the Government did not know and could not have known of the overpayment until sometime after the payment was made. *Id.*, 758 F.2d at 1558–59. The Defendants contend that a similar approach should be taken in the instant case.

This Court rejects the *Beck* analysis for royalty underpayment cases. Clearly, the Secretary of the Interior has a continuing right and obligation to audit and reconcile lease accounts. 30 U.S.C. § 1711(c). This "right" allows the Defendants to audit an account beginning the day a royalty payment is made. Understandably, the MMS initially relies on the good faith of the lessee and only audits at some later time. However, this initial reliance on ARCO's calculations does not toll the statute of limitations. From the moment a claim for underpayment accrues,[15] the Defendants reasonably *could know* the facts material to the right of action.[16] The Defendants thus have six years from the due date to exercise their right to audit and bring a claim for underpayment.[17]

The Court rejects the Defendants' invitation to interpret "reasonably could know" to mean "sufficient staff and resources to get around to it." Bureaucratic delays caused by budgetary constraints should not be a basis for extending the statute of limitations set forth by Congress. Such "political factors" should not provide the

basis for evaluating the reasonableness of the government's ability to learn of its cause of action. The congressional purpose behind enactment of § 2415 was to provide private persons with fairness, certainty, and efficiency in their contractual relationships with the government. S.Rep. No. 1328, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 2502, 2509–2513. The Court concludes that Congress did not intend for the statute of limitations set forth in § 2415 to be tolled by § 2416(c) when the government's workload is the only thing[18] preventing the government from exercising its lawful right to audit and consequently learn of its claim.

Thus, the Court concludes again, as it did in *Phillips III*, that the statute of limitations is not tolled prior to, or during, an audit of royalty payments conducted by the MMS.[19] The Defendants' claims for royalty underpayments accrued on the due date and ran for six years. Therefore, the Defendants' claim is barred as to royalty payments due prior to Sept. 25, 1983.

The Court also has before it the Defendants' Motion For Leave to File Amended Answer and Omitted Counterclaim Pursuant to Federal Rules of Civil Procedure 13 and 15. The proffered pleading incorporates the Defendants' original answer, sets forth the Defendants basis for issuing the Order and adds an amendment to the Defendant's original prayer. The proposed pleading adds the following new request to the Defendant's original prayer:

2. Affirm the MMS Order dated September 25, 1989 and enforce its terms;

The Court concludes that the proffered pleading, although titled "Counterclaim", is in reality a defense to the Plaintiff's claim

---

**15.** As discussed above, a claim for underpayment accrues on the due date of the payment.

**16.** From day one, all of the necessary information and records were available to the MMS for their review.

**17.** By exercising their authority to audit, the Defendants acquire "actual" knowledge of their claim. Prior to the audit, the Defendants' have constructive knowledge (i.e. they "could have" known) of any underpayment.

**18.** The Defendant's do not claim that fraud or any other wrongful action by ARCO prevented the MMS from learning of the underpayment.

**19.** Through this ruling, the Court reaches the issue the Circuit Court did not reach in *Phillips Petroleum Co. v. Lujan*, 951 F.2d 257, 259 (10th Cir.1991), when it stated:

Defendants are not asserting a claim for underpayment of royalties. Had they been, plaintiff might have very well been able to assert a statute of limitations defense.

and is arguably a claim seeking declaratory judgment and/or specific performance of the Order. The Defendants pleading does not state a claim for money damages as required by § 2415. Although the Defendants' motion to file its proffered pleading will be granted, the pleading will not be treated as a counterclaim for money damages and will not relate back to the date of the Defendants' answer.

The Plaintiff's Motion to strike the Defendant's Statement of Facts is hereby GRANTED. The Defendants' Motion for Leave to File Amended Answer is GRANTED to the extent set forth above. The Plaintiff's Motion for Summary Judgment as to the pre-Sept. 25, 1983, royalty payments is also hereby GRANTED. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court determines that there is no just reason for delay and therefore judgment is hereby entered on the statute of limitations issue in favor of ARCO and against the Defendants so that an interlocutory appeal may proceed along with *Phillips Petroleum Co. v. Lujan*, No. 89–C–914–B. Further proceedings in this case will be stayed pending an interlocutory appeal of this order.

IT IS SO ORDERED.

## ORDER ON MOTION TO ALTER OR AMEND

Before the Court for consideration is the Defendants' Motion to Alter or Amend Judgment pursuant to Fed.R.Civ.P. 59(e). Defendants ask this Court to reconsider its Order of September 9, 1992, and either amend or clarify it.

The Court's Order of September 9, 1992 ("the Order"), ruled on three pending motions as follows:

1) Granted Plaintiff's motion to strike Defendants' statement of facts; and

2) Granted Plaintiff's motion for summary judgment as to the pre-Sept. 25, 1983, royalty payments on Lease 601–006438–0;

3) Granted Defendants' motion for leave to file amended answer.

The Court entered a judgment on the pre-Sept. 25, 1983, royalty payments and allowed the parties to pursue an interlocutory appeal along with *Phillips Petroleum Co. v. Lujan*, No. 89–C–914–B (N.D.Okla. October 28, 1991), if timing and the Court of Appeals permitted. The Court also stayed all further proceedings in this case pending the interlocutory appeal.

Defendants now ask the Court to rethink its ruling on all three motions and amend or clarify the Order, prior to an appeal being taken. After further review of the issues and the posture of this case, the Court concludes the September 9, 1992, Order should be amended to the extent set forth below.

## I. BACKGROUND

Plaintiff, Atlantic Richfield Company ("ARCO"), is a lessee under various federal onshore and Indian oil and gas leases that were issued by the United States Department of the Interior ("the DOI" or "the Department"). As an onshore oil and gas lessee, ARCO pays royalties to the federal government on production from the leases, its obligations in this regard being governed by the Indian lands laws, 25 U.S.C. § 391, *et seq.*, the Mineral Lands Leasing Act, 30 U.S.C. § 181, *et seq.*, the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1701, *et seq.*, the DOI's regulations and the terms and conditions of the leases themselves.

Royalty paid on federal onshore and Indian leases is based on the value of the products produced.[1] The lessee pays the federal government a percentage, as provided in the lease, of the value of the products produced from the lease.

ARCO produces natural gas from its federal onshore and Indian leases. Some of the gas produced contains a high volume of liquid hydrocarbons.[2] This gas is trans-

---

**1.** ARCO points out that some older leases provide for a flat-fee royalty rather than a royalty based on a percentage of the value of production.

**2.** This gas is commonly referred to as "wet" natural gas. This gas must be processed to separate the liquid hydrocarbons from the dry methane, or "residue gas."

ported to processing plants where natural gas liquid products ("NGLP's"), such as ethane, propane, butane, propane-butane mixtures and natural gasoline, are separated from the residue gas (methane). In such cases, the DOI regulations require ARCO to pay royalty on 100 percent of the value of the residue gas. 30 C.F.R. § 221.50 (1980), *redesignated,* 30 C.F.R. § 206.105 (1983). The regulations also require ARCO to pay a royalty on a portion[3] of the value of the NGLP's extracted from the wet gas. 30 C.F.R. § 221.51 (1980), *redesignated,* 30 C.F.R. § 206.106 (1983) (federal onshore leases); 25 C.F.R. § 171.13 (1980), *redesignated,* 25 C.F.R. § 211.13 (1982) (tribal lands); 25 C.F.R. § 172.16 (1980), *redesignated,* 25 C.F.R. § 212.16 (1982) (allotted lands).

The Defendants, Secretary of the Department of Interior Manuel Lujan, Director of the Minerals Management Service ("MMS") Barry Williamson and Area Manager of the MMS Dallas Area compliance office Nick Kelly, are sued by ARCO as a result of an Administrative Order ("the MMS Order") issued by the Defendants,[4] dated September 25, 1989.

This MMS Order[5] notified ARCO that it had deducted an incorrect manufacturing allowance[6] from past royalty payments on the audited lease. Based on this information, the MMS concluded that a systemic failure existed in ARCO's royalty calculation method. Thus, it ordered ARCO to recalculate royalties on gas produced from *all* (over 1000) of its Indian and Federal onshore oil and gas leases using a cost-based manufacturing allowance for the period October 1, 1980, through February 29, 1988, and pay any resulting deficiencies.[7]

## II. PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' STATEMENT OF FACTS

The September 9, 1992, Order arose out of Plaintiff's Motion for Summary Judgment and Defendants' Cross–Motion for Summary Judgment.[8] These motions were originally filed January 21, 1992,[9] along with supporting memorandums that addressed a plethora of issues. Reply memo-

3. The regulations permit the lessee to take a processing allowance. This processing allowance is subtracted from the value of the NGLP's to determine the royalty value (i.e. the value upon which the lessee must pay a royalty). Total royalty value is therefore 100 percent of the value of the residue gas, plus the value of the extracted liquids, less the processing allowance. The proper processing allowance is in dispute in this case. ARCO contends that the regulations only require it to pay royalty on one-third of the value of the NGLP's, with the other two-thirds representing an allowance for the cost of extracting the NGLP's (regardless of actual cost). The Defendants contend that the regulations require ARCO to pay a royalty on 100 percent of the value of the NGLP's, less a processing allowance based on actual cost, not to exceed two-thirds of the value of the NGLP's.

4. The contested Order was issued by the Dallas Area Compliance Office of the Royalty Compliance Division of the Minerals Management Service, United States Department of the Interior.

5. The *Order* arose out of an MMS audit of ARCO's royalty payments on Lease 601–006438–0 (hereinafter "the audited lease" or "the subject lease") for the period October 1, 1980, through September 30, 1983. According to ARCO, this lease is an Oklahoma Five Civilized Tribes Act lease, covering lands located in Creek County, Oklahoma. The lease was issued in 1912 and gas sales from it ceased prior to September 25,

1983. The production from the lease was processed through the Drumright Gas Processing Plant, which is wholly owned and operated by ARCO.

6. The *Order* stated that a manufacturing allowance of 66⅔ percent was being deducted from royalty payments and that such an allowance was not cost supported. ARCO admits it took an automatic two-thirds manufacturing allowance and argues that the regulations permit such an allowance.

7. The MMS Order also gave ARCO the option to simply "compute and pay royalties on 100 percent of the residue gas plus 100 percent of the value of the natural gas liquid products (NGLP's) on all gas from onshore Federal and Indian leases processed through plants in which ARCO had an ownership interest." Thus, the MMS Order requires ARCO to calculate its royalties with a cost-based manufacturing allowance, or no manufacturing allowance at all.

8. The factual background of this case has been fully set forth in the parties summary judgment briefs and in the previous Order and therefore need not be repeated here.

9. Shortly thereafter, both parties filed a corrected copy of their respective memorandum in support of summary judgment.

randums were filed April 6, 1992, by both parties and the Court heard oral arguments on the pending motions on June 19, 1992. At that hearing, the Court determined that it should first address the statute of limitations issue, and consequently provided the parties with another opportunity to specifically brief this issue. The parties were given until July 6 to file an agreed statement of facts [10] relating to the statute of limitations question.[11] The parties were unable to agree on a statement of facts as they had assured the Court they would. Instead, the Defendants submitted their own statement of facts,[12] which the Plaintiff moved to strike.[13]

In the September 9, 1992, Order, this Court granted the Plaintiff's motion to strike the Defendants' statement of facts ("the statement"), in part because of the parties failure to submit an *agreed* statement of facts as directed by the Court. The decision was also based on the statement's lack of relevance to the Court's ruling. Defendants now contend that the Court was in error in striking the statement.

Defendants argue that the statement is highly relevant because it is "critical to this Court's analysis in determining when the MMS can know or reasonably know of specific underpayments." (Memorandum of Points and Authorities in Support of Defendants' Motion to Alter or Amend Judg-

ment, p. 9). Defendants assert that the statement supports their argument that MMS cannot know whether an underpayment exists until an audit is done. Specifically, the Defendants' contend that the statement is relevant because it supports the following:

(1) All sales, volume, royalty value and other royalty information reported to the MMS comes from the payor;

(2) At the time the data is reported, the MMS does not know whether production and sales have been correctly reported as to either quantity or royalty value;

(3) MMS's dependence upon information from federal lessees directly impacts the MMS's ability to know when underpayments exist;

(4) The lessee's own regular adjustments to its royalty payments tendered months and years after the fact demonstrate that not even ARCO, much less the MMS, possesses complete information necessary to pay royalties accurately in all instances at the time payment originally is made.

The Court's analysis of the statute of limitations issue under 28 U.S.C. § 2415 pertains only to Lease No. 601–006438–0. Although the Defendant's statement of facts may be relevant to other specific leases, it is not relevant to the subject lease. The Court will amend its Order of September 9, 1992, and permit the Defendants'

---

**10.** At the June 19 hearing, the parties assured the Court that they could at least agree on the facts so that the statute of limitations question could be addressed.

**11.** Both parties had previously included a statement of material facts in their respective motions for summary judgment pursuant to Local Rule 15.

**12.** Defendants' statement of facts primarily relates to the volume of work the Minerals Management Service ("MMS") handles. The statement is the affidavit of James R. Detlefs, the Chief of the Fiscal Accounting Division of the MMS, and an attached report (365 pages) which lists all the adjustments made by ARCO since October 1, 1983, to production sales value and royalty value previously reported to MMS for production months before October 1, 1983.

According to the Defendants', the affidavit addresses the "scope and operation of the Feder-

al Mineral leasing Program" and the contents of the statement "pertain to the [MMS's] receipt of and dependance upon information from federal lessees and other royalty payors." Defendants claim that these facts are relevant to their defense that the Government could not reasonably know the facts material to an action for underpayment of royalty.

**13.** Plaintiff contends that the facts listed in the Defendants' Statement of Facts are irrelevant to the statute of limitations question. Plaintiff argues that the Government's workload and dependance on lessee reported information does not toll the statute of limitations. Plaintiff also points out that the "facts" included in the Defendants' statement of facts were not even mentioned in the Defendants list of material facts included with its motion for summary judgment. In the alternative, the Plaintiff asks for more time to respond due to the detailed nature of the Defendants' facts.

filing of their Statement of Facts. The Court further concludes that the Plaintiff has adequately responded to the Defendants' Statement of Facts and thus the Plaintiff's request for additional time to respond is denied.

## III. CROSS–MOTIONS FOR SUMMARY JUDGMENT

### A. STATUTE OF LIMITATIONS

This Court's Order of September 9, 1992, concluded the following as to the statute of limitations issue:[14]

1) a claim for underpayment of royalties accrues on the date the payment is due;

2) the statute of limitations begins to run from the date the claim for underpayment accrues and runs for 6 years pursuant to 28 U.S.C. § 2415;[15]

3) the statute of limitations is not tolled prior to, or during, an audit of royalty payments conducted by the MMS;

4) the Government's workload and "dependence" on lessee provided information does not toll the statute of limitations;[16]

5) the Government failed to demonstrate any sufficient basis for tolling the statute of limitations on the audited lease (No. 601–006438–0); and therefore,

6) all claims concerning payments made prior to September 25, 1983,[17] *on the audited lease* were barred by the statute of limitations.

The Court's September 9, 1992, Order only addressed the very narrow question of whether the statute of limitations barred the Government from recovering on alleged royalty underpayments made by ARCO prior to September 25, 1983, on lease number 601–006438–0. After determining the accrual date, and the lack of an evidentiary basis for tolling on the subject lease, the Court simply answered this question in the affirmative.

The Court's Order did not conclude that the statute of limitations barred all claims against ARCO on all leases for royalty underpayments due more than 6 years prior to the MMS Order. Further, the Court did not conclude that fraud was the only basis for tolling the statute of limitations. The Court merely determined that the De-

---

**14.** The Court's analysis and the authorities in support thereof are fully set forth in the September 9, 1992, Order and are incorporated herein.

**15.** This section provides that a claim must be filed within 6 years after the right of action accrues or within one year after a final decision is rendered in applicable administrative proceedings, whichever is later.

**16.** In their motion to alter or amend, the Defendants' mischaracterize the Court's analysis and suggest that the Court's ruling requires the MMS to hire an auditor for every lease who must conduct a monthly audit as soon as each payment is received. (brief in support of Defendants motion to alter or amend, p. 3–5).

The Court's reference to the workload of the MMS (Order p. 11–12) was only in response to the Defendants' repeated argument (Corrected Memorandum in Support of Defendants' Cross–Motion for Summary Judgment, p. 28; Defendants' Supplemental Brief on the Statute of Limitations, p. 8–13; Defendants Statement of Facts, p. 1–4) that the statute of limitations should be tolled until an audit is concluded because the MMS has too much work to "reasonably know" of any underpayment until that time. The Court's ruling simply stated that "workload" is not a sufficient basis for tolling the statute of limitations pursuant to 28 U.S.C. § 2416(c).

The Defendants now explain that "the nature of the transaction and the relationship between the parties" rather than a lack of audit resources is the reason the MMS is unable to know of underpayments prior to conducting an audit.

**17.** The parties agree that the statute of limitations does not bar the Defendants' claims for royalties on any lease from September 25, 1983 through February 1988. The statute of limitations provides that the Government must file its claims for money damages within six years. However, if administrative proceedings are begun within the six year period, the Government is not barred from bringing its claims until one year after a final decision is rendered in those administrative proceedings. 28 U.S.C. § 2415.

In this case, the Government initiated administrative proceedings by issuing the September 25, 1989, Order. *Phillips Petroleum Company v. Lujan*, No. 89–C–914–B, slip op. at 8 (N.D.Okla. Oct. 25, 1991). ARCO's administrative appeal of the MMS Order is currently being stayed by the agency. The Government has one year after a final decision is rendered in those administrative proceedings in which to file a complaint on claims for underpayments which accrued between September 25, 1983, and February 1988, and were covered by the MMS Order.

fendants had failed to provide a sufficient basis for tolling a claim involving the audited lease.[18] Thus, as to Lease 601–006438–0, the Government had six years after each payment was due in which to exercise its option to audit the information provided by ARCO, and/or file a claim, if such was warranted. The Government failed to do so and thus is now barred from recovering on the subject lease.

The Defendants continue to argue in part that the statute should be tolled until an audit is concluded because the nature and complexity of the royalty payment calculation often forces the lessee to make adjustments to its account based on later information.[19] However, the Government provided no evidence in this case that ARCO had ever made an adjustment to any royalty payment on lease number 601–006438–0.[20] For this reason, the question of whether a lessee's adjustment of an earlier payment tolls the statute of limitations is not before this Court.[21]

A ruling on whether the statute of limitations bars a particular claim requires a fact-specific examination of that lease claim (i.e. a lease-by-lease and payment-by-payment analysis). In this case, the Court's ruling only applies to the audited lease and the payments made prior to September 25, 1983, thereon. Despite the parties inability to agree on a statement of facts, the Court concludes that there are no *material* facts in dispute as to the audited lease. Therefore, as to this issue, the case is properly postured for a ruling by this Court at this time. The Court concludes that 28 U.S.C. § 2415(a) bars any claim for money damages on lease payments made before September 25, 1983, on lease number 601–006438–0. For these reasons, the Defendants Motion to alter or amend is DENIED as to this issue.

## B. REMAINING ISSUES

As the parties have made abundantly clear, this matter involves much more than an interpretation of the applicable statute of limitations. From the earliest stages of this litigation, the Court has recognized that the remaining issues [22] are probably

---

**18.** The Court found nothing in the nature of the transaction or the relationship of the parties that warranted a tolling of the limitations period. (See the discussion in the September 9, 1992, Order concerning the distinction between the instant case and Medicare "estimated payment" cases.) The actual date of payment, any subsequent adjustments to the payment and the conduct of the parties are factors which may cause a tolling of the statute. The Court has been given no relevant evidence *concerning the audited lease* as to any of these factors.

**19.** The Defendants contend that they should not be required to "know" of underpayments at the time the payment is originally made if the lessee itself does not know the proper amount until some time later.

**20.** In fact, there is no evidence in the record that any activity or transaction involving the audited lease occurred after September 25, 1983. ARCO states that gas sales from the audited lease ceased prior to September 25, 1983. The Defendants have not disputed this fact.

**21.** The answer, however, would seem clear in the case where the lessee adjusts its prior royalty payment by making an additional payment. 28 U.S.C. § 2415(a) (provides "[t]hat in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment.")

**22.** The following issues posed by this litigation will be referred to as "the remaining issues":

1) Whether the applicable regulations give the MMS the authority to issue a "blanket" order applicable to all of ARCO's leases; if so, whether the results of the audit of lease 601–006438–0 provided sufficient grounds for the MMS to issue such a "blanket" order requiring ARCO to recalculate all its royalty payments on all its leases (or whether the MMS had other sufficient grounds for issuing such an order);

2) Whether ARCO is entitled to an automatic two-thirds processing allowance based on the regulations or on past conduct of the parties, or is limited to an actual cost processing allowance when its actual cost is less than two-thirds of the value of the extracted liquid hydrocarbons;

3) Whether the MMS can require ARCO to recalculate its royalty payments on a cost basis or whether ARCO is merely required to provide its records for the MMS to review;

4) Whether ARCO is entitled to an automatic two-thirds processing allowance on Indian tribal and allotted leases; if so, can the MMS require ARCO to recalculate the royalty payments on these leases;

5) Whether the MMS can require ARCO to recalculate royalty payments on which the MMS is barred from collecting as a result of the statute of limitations;

more properly handled in the first instance by the administrative process.[23] The Court's September 9, 1992, Order stayed the proceedings as to all the remaining issues, pending a ruling from the Court of Appeals on the statute of limitations issue on the subject lease. Upon further reflection, the Court sees no reason to retain jurisdiction over matters not properly before it.

Therefore, after thoroughly reviewing all the pleadings in this matter, the Court now *sua sponte* reconsiders its Order of November 9, 1990, denying Defendants' Motion to Dismiss. In their memorandum in support of their Motion to Dismiss, Defendants argue that Plaintiff's Complaint is premature, because Plaintiff has failed to exhaust its administrative remedies with respect to the MMS Order. Furthermore, they claim that ARCO is not entitled to judicial review under 5 U.S.C. § 704 because the MMS Order does not constitute final agency action.

Plaintiff claims that the Order does constitute final agency action and is therefore immediately reviewable by this Court under 5 U.S.C. § 704. Additionally, Plaintiff argues that, even in the absence of 5 U.S.C. § 704, the exhaustion of administrative remedies doctrine is subject to numerous judicially imposed exceptions under which this case would qualify.

■ In the November 9, 1990, Order, this Court denied the motion to dismiss based on the statutory interpretation exception to the exhaustion doctrine. However, this exception only applied to the statute of limitations question, which the Court has now ruled on.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). "The doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Id.* See also *St. Regis Paper Co. v. Marshall*, 591 F.2d 612, 613 (10th Cir.1979) and *Casey v. Schlesinger*, 382 F.Supp. 1218, 1219 (N.D.Okla.1974). It is also well-established that the court has substantial discretion in determining whether to require exhaustion of administrative remedies. *N.L.R.B. v. Industrial Union of Marine and Shipbuilding Workers of America*, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

After further review, the Court concludes that the remaining questions in this case are not "solely [questions] of statutory interpretation" and thus *Frontier Airlines* is not controlling. *Frontier Airlines, Inc. v. Civil Aeronautics Board*, 621 F.2d 369 (10th Cir.1982) (finding exception to exhaustion doctrine where the question is solely one of statutory interpretation). Although the final resolution of this matter will certainly require some degree of regulatory and statutory interpretation, the parties have aptly demonstrated that this case involves much more than applying a given set of facts to an unclear royalty statute.

The Court concludes that a great deal can be gained in this case by developing a factual record through the administrative process and allowing the agency to apply its expertise. Therefore, reasoned discretion dictates that the Court not apply the statutory interpretation exception to the

6) Whether some of the leases covered by the blanket order contain royalty provisions based on a flat-fee rather than a percentage of the value of production, and if so, can the MMS require ARCO to recalculate the royalty payments on these leases;

7) Whether the procedure set forth in the MMS's "Instructions For Filing Figures In Support Of An Onshore Manufacturing Allowance" are consistent with the applicable statutes, regulations and IBLA decisions; what is

the proper method for determining the reasonableness of NGLP values based on non-arms-length transactions; whether it is proper to apply the Procedure Paper; whether the Procedure Paper can be applied retroactively; whether the MMS Order is in conflict with the Procedure Paper and IBLA decisions;

23. See Order of November 9, 1990, p. 3; and Reporter's Transcript of Proceedings, June 19, 1992, p. 8–9, 13.

remaining issues in this case.[24] *See St. Regis Paper Co.*, 591 F.2d at 614.

■ This conclusion requires the Court to now address the issue it did not reach in the November 9, 1990, Order—whether the MMS Order was final agency action for purposes of 5 U.S.C. § 704. Department of Interior regulations provide for two levels of administrative review. First, "[a]ny party to a case adversely affected by a final Order or decision of an officer of the Minerals Management Service" has "a right to appeal to the Director, Minerals Management Service...." 30 C.F.R. 290.2. In addition, any party "adversely affected by a final decision of the Director, Minerals Management Service," has a further "right of appeal to the Board of Land Appeals [IBLA] in the Office of Hearings and Appeals." 30 C.F.R. 290.7. The Defendants contend that these regulations show that the MMS Order was not final agency action.

ARCO argues that the MMS Order is reviewable by this Court despite the two levels of administrative appeal still available because the agency regulations do not provide that the MMS Order shall be unconditionally inoperative during the administrative review process as required by 5 U.S.C. § 704. ARCO points out that the MMS Order required the posting of an adequate surety to suspend the Order.[25] The Defendants admit that "where the Order must be complied with pending administrative review, that Order may be considered final under the APA and, thus, subject to judicial review." (Defendants' Memorandum of Points and Authorities Support of Motion to Dismiss, p. 15).

Defendants argue that the MMS Order may be suspended (i.e. made inoperative) pending appeal upon the posting of an adequate surety.[26] They further point out that such suspension of MMS Orders is routine, and has been granted in this case.[27] ARCO argues that the requirement of a surety makes the Order "operative" pending appeal and thus reviewable immediately in this Court.

Due to the unusual nature of this case, the determination of an adequate surety is simply not possible. Therefore, the requirement of any surety would likely be found to be arbitrary and capricious. It appears the agency has reached this same conclusion and has thus stayed the enforcement of the Order, without the posting of a surety, pending the resolution of ARCO's appeals.

The Court concludes that a continuation of the current stay issued by the agency would satisfy the APA requirement that the Order be inoperative pending the administrative appeal process. However, if the agency withdraws its stay, orders immediate royalty payments on 100% of the value of NGLP's, requires an unreasonable blanket surety based on an indeterminate amount, or assesses substantial oppressive penalties during the administrative review process, the MMS Order will become operative and ARCO may be entitled to a direct appeal in this Court.

In summary, the Court is ruling on the narrow statute of limitations issue posed by the attempt to collect underpayments on the audited lease and granting Plaintiff's Motion for Summary Judgment as to that issue. As to the remaining issues, the

24. The Court also concludes that no other exception to the exhaustion doctrine applies in this case. Specifically, the Court finds that ARCO has failed to show that pursuit of administrative remedies would be futile. The scarcity of case law in this area makes the result of administrative review anything but certain.

25. ARCO also points out that the MMS Order says that compliance with the Order *may* be suspended upon posting the surety. ARCO argues that this language indicates that even posting a surety may not be sufficient to suspend the Order.

26. ARCO contends, and the Court agrees, that the nature of this case makes the posting of an "adequate" surety impossible without performing the recalculation that is the subject of ARCO's appeal from the MMS Order.

27. The Department of Interior issued a limited suspension of the MMS Order in this case. The MMS Order was suspended, without the posting of a surety, pending this Court's determination of the Defendant's Motion to Dismiss. The stay has apparently not been lifted by the agency as of this date.

Court is granting Defendants' Motion to Dismiss without prejudice for failure to exhaust administrative remedies. As set out in this Order, Defendant's Motion to Alter or Amend Judgment is GRANTED in part and DENIED in part.[28]

IT IS SO ORDERED.

See also 803 F.Supp. 377.

**28.** In view of the fact that the Court is entering a Final Judgment along with this Order on all claims for money damages resulting from royalty payments on lease 601–006438–0 and dismissing the remainder of this suit without prejudice for failure to exhaust administrative remedies, the Court is of the view that all issues have been decided at the trial court level and the matter is appealable.